**FERNALD & ZAFFOS**
BRANDON C. FERNALD (SBN: 222429)
15910 Ventura Blvd., Suite 1702
Encino, CA 91436
Telephone:(323) 410-0300
Facsimile: (323) 410-0330
Email: brandon@fzlaw.com

*Attorneys for Defendant,*
*LUV N' CARE, LTD.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKE RICHARDS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>LUV N' CARE, LTD. and DOES 1 through 10, inclusive,<br><br>        Defendants.<br>_____ | CASE NO.  2:24-cv-00956-FMO-ADS<br><br>**DEFENDANT LUV N' CARE, LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT**<br><br>Date: Thursday, May 16, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Fernando M. Olguin<br>Ctrm: 6D |

DOCUMENT PREPARED
ON RECYCLED PAPER

**TO PLAINTIFF AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on May 16, 2024 at 10:00 a.m., before the Honorable Fernando M. Olguin in Courtroom 6D of the United States District Court for the Central District of California (Southern Division), located at 350 West 1st Street, Los Angeles, California 90012, LUV N' CARE, LTD. ("LNC" or "Defendant") will and hereby does move this Court for an order dismissing Plaintiff's First Amended Complaint [Dkt. No. 10], pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 4, 2024.

The Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, any Reply memorandum, and such other matters as may be presented at or before any hearing the Court conducts.

Dated: April 11, 2024

**FERNALD & ZAFFOS**

By:   */s Brandon C. Fernald*
Brandon C. Fernald

Attorneys for Defendant,
LUV N' CARE, LTD.

# MEMORANDUM OF POINTS & AUTHORITIES

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................III

TABLE OF AUTHORITIES ................................................................................. V

I.     INTRODUCTION. ......................................................................................1

II.    SUMMARY OF FACTS ALLEGED IN THE FAC. ..................................4

    A.   LNC's Product Line and Marketing Materials. ..................................4

    B.   The Ubiquitous Presence of PFAS in the Environment. .....................6

    C.   Plaintiff's Purchase and Testing Allegations. ....................................8

III.   STANDARD FOR DISMISSAL UNDER RULE 12. .................................9

IV.    ARGUMENT...............................................................................................10

    A.   Plaintiff Fails To Establish Article III Standing To
       Pursue Her Claims. ............................................................................10

       1.   Plaintiff fails to allege facts plausibly establishing
            the existence of *any* PFAS, let alone harmful PFAS...........11

       2.   Even if the Court infers that organic fluorine is an
            indicator of harmful PFAS, Plaintiff fails to
            plausibly connect her purchase to the indirect testing
            conducted two years later...................................................13

       3.   The FAC does not set forth sufficient facts to
            establish an injury based on a price premium theory. ..........15

    B.   Even If Plaintiff Established Article III Standing,
       Plaintiffs Consumer Fraud Claims Are Not Pled With
       Sufficient Particularity. ......................................................................17

       1.   Plaintiff has failed to meet the Rule 9(b) heightened
            pleading standard for fraud-based claims. ...........................17

       2.   Plaintiff has failed to allege an actionable omission
            under the UCL, FAL and CLRA. ........................................18

          a)   There is no omission contrary to any
               representation actually made by LNC. .........................18

          b)   There was no omission of a fact that LNC was
               obliged to disclose. ....................................................20

       3.   Plaintiff has failed to allege facts showing
            reasonable reliance.............................................................22

DOCUMENT PREPARED
ON RECYCLED PAPER

4.   There are no affirmative misrepresentations alleged. ...........................22

C.   The Claim For Unjust Enrichment Is Not Cognizable
Under California Law And Is Duplicative Of The Other
Claims...................................................................................................22

V.  CONCLUSION ..........................................................................................23

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF AUTHORITIES

## Cases

*Andrews v. Procter & Gamble Co.,* No. EDCV1900075AGSHKX, 2019 WL 6520045 (C.D. Cal. June 3, 2019)..................................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................15

*Babaian v. Dunkin' Brands Grp., Inc.,* 2018 WL 11445613 (C.D. Cal. June 12, 2018)........................................22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................15

*Brown v. Coty, Inc.*, No. 22 CIV. 2696 (AT), 2023 WL 2691581 (S.D.N.Y. Mar. 29, 2023).......................................18

*Brown v. Madison Reed, Inc.*, No. 22-16415, 2023 WL 8613496 (9th Cir., Dec. 13, 2023)....................................23

*Cahen v. Toyota Motor Corp.,* 717 F. App'x 720 (9th Cir. 2017) ...........................22

*Clinger v. Edgewell Personal Care Brands, LLC*, No. 21 Civ. 1040, 2023 WL 2477499, at *4 (D. Conn. Mar. 13, 2023) ................................20

*Ebeid ex Rel. U.S. v. Lungwitz,* 616 F.3d 993 (9th Cir. 2010).............................23

*Ebner v. Fresh, Inc.*, 818 F.3d 799 (9th Cir. 2016)................................23, 24

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016)................................28

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ................................23

*Harris v. McDonald's Corp.*, No. 20-cv-06533-RS, 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021)..................................26

*Hodsdon v. Mars, Inc.,* 162 F.Supp.3d 1016 (N.D. Cal. 2016) ...........................15

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) .....................................24, 26

*Hooked Media Grp. v. Apple Inc.*, 55 Cal.App.5th 323 (2020)...........................28

*Horti v. Nestle HealthCare Nutrition, Inc.,* 2022 WL 2441560 (N.D. Cal. July 5, 2022) ................................22

*In re Conagra Foods Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012)..................................................29

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ..............................16, 23

*Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496 (2003)...........................24

*Lewis v. Casey*, 518 U.S. 343, 357 (1996)...........................................16

DOCUMENT PREPARED
ON RECYCLED PAPER

*Lowe v. Edgewell Pers. Care Co.*, No. 23-CV-00837-AMO, 2024 WL 150758 (N.D. Cal. Jan. 12, 2024) ......................................18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)...............................16

*Matthews v. Polar Corp.*, No. 22-CV-649, 2023 WL 4534543 (N.D. Ill. Mar. 22, 2023) ............................................................................25

*Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779 (2003) ...................................................................................................28

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) ...........................24

*Mort v. United States,* 86 F.3d 890 (9th Cir. 1996) ...............................29

*Naimi v. Starbucks Corp.,* 798 F. App'x 67 (9th Cir. 2019) ......................21

*Onaka v. Shiseido Americas Corp.*, No. 1:21 Civ. 10665 PAC, 2024 WL 1177976 (S.D.N.Y. Mar. 19, 2024) ......................................18, 19, 21

*Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665-PAC, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) ...................................19

*Rodriguez v. Mondelez Global, LLC*, No. 23-cv-00057-DMS-AHG, 2023 WL 8115773. (S.D. Cal., Nov. 22, 2023) ........................26

*Solis v. Coty, Inc.*, No. 22-CV-0400-BAS-NLS, 2023 WL 2394640 (S.D. Cal. March 7, 2023)..................................................17

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .........................................16

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)..............................16

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .................................16

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)......................................................................................15

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ...............................23

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ...........................26

**Statutes**

*Health & Saf. Code*, §108945 ...............................................................12, 20

*Health & Saf. Code*, §108981(a) .................................................................12

*Health & Saf. Code*, §108981(e) .................................................................12

*Health & Saf. Code,* §108981.5 ..................................................................12

DOCUMENT PREPARED
ON RECYCLED PAPER

Defendant LUV N' CARE, LTD. ("LNC" or "Defendant") submits this memorandum in support of its Motion to Dismiss, pursuant to Fed. R. Civ. Proc. 9(b), 12(b)(1) and 12(b)(6), the First Amended Complaint ("FAC") filed by Plaintiff Brooke Richards, individually and on behalf of the putative class:

I.   **INTRODUCTION.**

Plaintiff filed this consumer class action on **January 4, 2024**, contending that one sippy cup product she purchased in **January 2022** was tainted with perfluoroalkyl and polyfluoroalkyl substances ("PFAS") and that LNC's failure to disclose the potential presence of PFAS is deceptive and amounts to false advertising. Even presuming the truth of the facts alleged for the purposes of a motion to dismiss, there are insufficient facts to establish the presence of any harmful PFAS at harmful levels in Plaintiff's lone purchase and nothing on LNC's website that would permit a reasonable consumer to jump to the conclusion that Plaintiff supposedly reached—*to wit* that LNC's Product Line[1] was PFAS-Free.

Plaintiff claims that LNC promotes its products as "free of suspected harmful chemicals" (it does not) and based on that representation, Plaintiff alleges that she reasonably concluded that the 2022 sippy cup she purchased and the Product Line was PFAS-free. She does not allege what prompted her, a year after the 2022 sippy cup purchase, to purchase and test more of the same sippy cups and a random sample of the additional sippy cups. The first test, only on a single sippy cup purchased almost a year after the 2022 sippy cup was purchased, revealed a small amount (18 ppm) of organic fluorine, which Plaintiff contends is an *indicator* of the presence of known and unknown, harmful and non-harmful PFAS.

---

[1] In its FAC, plaintiff lists ten sippy cup products together with replacement spouts for those products and defines that group of products as the Nuby Sippy Cup Soft Spout Product Line.  LNC will refer to those products in this memorandum simply as the Product Line.

Following that one test result, Plaintiff filed this action in the Los Angeles Superior Court alleging individual and representative class claims for (1) false and misleading advertising in violation of California Business and Professions Code §17200, et seq. (the "UCL"); (2) false and misleading advertising in violation of California Business and Professions Code §17500, et seq. (the "FAL"); (3) violation of California Civil Code §1750, et seq. (the "CLRA"); and Count IV: unjust enrichment. After LNC removed the case to the Central District, on March 8, 2024, Plaintiff filed the First Amended Complaint ("FAC"), asserting the same claims but significantly expanding the breadth of the allegations.

There are several key facts that are lost in the verbose expanse of the FAC, which serve to destroy Article III standing.

One, Plaintiff identified a single product that she actually purchased, but defines the Product Line as containing eleven different products (ten of which she did not purchase herself).

Two, Plaintiff did not test the product she actually purchased, but commissioned testing of sample products of unspecified lots obtained by counsel *eleven months and two years later,* respectively.

Three, Plaintiff presumes that sample testing on four of the eleven products in the Product Line establishes the existence of PFAS across the board.

Four, Plaintiff does not identify *any* of the some 9,000+ substances loosely defined as PFAS (harmful or not) that are allegedly present in the Product Line.

Five, Plaintiff categorically concludes (with *no* factual basis) that the presence of organic fluorine is an indicator of the presence of *harmful* PFAS.

Six, Plaintiff does not contend to have suffered an injury from the presence of PFAS, but rather that the presence of organic fluorine *may* result in exposure to PFAS which in turn *may* cause serious health effects and for that reason she either would not have purchased the product or would have paid less for it.

DOCUMENT PREPARED
ON RECYCLED PAPER

Seven, what the LNC website actually says and what Plaintiff claims it says to create an actionable omission are plainly at odds.

Plaintiff *does not* allege that LNC intentionally added PFAS to the Product Line or made any direct affirmative representations about the potential presence or absence of PFAS in the Product Line. Instead, Plaintiff asserts that accurate statements about LNC's directives to its manufacturers and suppliers regarding general manufacturing and products standards on LNC's FAQ website page led consumers to believe that every product was completely PFAS-free. No reasonable customer would make this leap.

At base, the primary defect is the lack of Article III standing. This Plaintiff alleges on her own behalf and on behalf of a class of persons that purchased LNC products over a four-year period in California. Fundamentally, the named plaintiff must demonstrate Article III standing for her own claims as well as the class. *This* Plaintiff plainly lacks such standing.

Plaintiff has not established the amounts or type of PFAS present in any of the four tested products. Plaintiff's testing for an "indicator" organic fluorine does not establish the presence of any harmful PFAS, much less harmful PFAS at levels that are harmful to any consumer. Plaintiff has also failed to plausibly allege that she purchased a product containing harmful PFAS and thus fails to demonstrate an injury-in-fact. Many courts have rejected substantially similar speculative and vague allegations, particularly where indirect test results reveal the presence of organic fluorine as a so-called proxy for unspecified PFAS.

Even assuming Article III standing, Plaintiff has failed to allege consumer fraud with sufficient particularity as required by Rule 9(b).

In addition, there are notable contradictions in the allegations that refute Plaintiff's asserted basis for fraud by omission. By way of example, Paragraph 36 contends that the products in the Product Line over the four-year period were all

manufactured in the same place and composed of the same materials, so organic fluorine was present in all of the products purchased and tested. Just seven paragraphs later, Plaintiff contends that Plaintiffs lack the expertise to ascertain the existence of the true materials, chemicals and/or ingredients and that *Defendants* had exclusive knowledge of the materials, chemicals and/or ingredients in the Product Line and that Plaintiff had to rely on LNC to disclose the materials, chemicals, and ingredients. (See FAC ¶¶ 44-43.) So how does Plaintiff know enough to conclude that all products in the Product Line contain PFAS but simultaneously lacks knowledge as to the content of those same products!?

Another glaring inconsistency is that LNC's website simply *does not claim* that its products are "free of suspected harmful chemicals." Such contradictions, as well as the absence of particularized facts required by Federal Rule of Civil Procedure 9(b), are fatal to Plaintiff's claims.

LNC seeks dismissal of each cause of action set forth in the FAC because Plaintiff (1) has not plausibly alleged that the product she purchased contained PFAS or that the products contain PFAS that are harmful and therefore lacks Article III standing, (2) has failed to meet Rule 9(b)'s heightened pleading standard, (3) has failed to allege facts establishing that a reasonable consumer would have been misled, (4) has failed to allege facts establishing a duty to disclose the potential presence of PFAS, and (5) cannot plead a claim for unjust enrichment where there is an adequate remedy at law and where it is not actionable as a stand-alone cause of action.

## II.   SUMMARY OF FACTS ALLEGED IN THE FAC.

The pertinent allegations of the FAC are summarized below.

### A.   LNC's Product Line and Marketing Materials.

LNC sells a variety of baby and toddler products, including products in the Nuby Sippy Cup Soft Spout Product Line. (FAC ¶¶ 5-6.) Plaintiff identifies eleven different products in the defined Product Line as:

DOCUMENT PREPARED
ON RECYCLED PAPER

1.      Grip N Sip Soft Spout Trainer Cup

2.      Clik it Easy Grip Soft Spout Sippy Cup

3.      Clik it Sili Bands Soft Spout Sippy Cup

4.      Click it Soft Spout Grip N Slip Cup Designer Series

5.      Clik it Grip N Slip Soft Spout Trainer Cup

6.      Mini Gripper Soft Spout Sippy Cup

7.      Clik it Travel Sippy Cup with Carabiner

8.      Mini Gripper Soft Spout Sippy Cup with Sleeve

9.      2 Handle Mini Grip N Sip Training Sippy Cup

10.     iMonster Soft Spout Grip N Sip Trainer Cup

11.     Replacement Spouts for each of the products.

(FAC ¶ 7.)

Plaintiff contends that these products were and are substantially similar, with the same composition of materials, manufactured in the same place and manner and all contain at least one fully chlorinated carbon atom and organic fluorine. (*Id.*)

Plaintiff alleges that there is currently significant public health concern about the materials and chemicals used in infant and children's products and as a result there is an incentive for LNC to market its brand and Product Line as high-quality and free of harmful chemicals. (FAC ¶¶ 13-14.)

Plaintiff contends that Defendant promoted, and continues to promote, the Nuby brand and the products in the Product Line as high-quality, free of suspected harmful chemicals, kind to delicate gums and precious teeth and sustainable through the following marketing representations and statements on the Nuby brand website." (FAC ¶ 10.) Plaintiff provides screenshots of the various portions of the website that purport to make the above representations. (FAC ¶ 10(i)-(v).) The website screenshots are the only materials alleged to contain the purported representations.

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff asserts that through that marketing, LNC was able to sell products from the Product Line to thousands of consumers throughout California and the rest of the United States. (FAC ¶ 11.) Plaintiff alleges that she reasonably understood the marketing and labeling to mean that the products were high-quality, free of suspected harmful chemicals, kind to delicate gums and precious teeth, and sustainable. (FAC ¶ 12.)

Plaintiff also contends that the product packaging omits and does not provide any disclosure of the existence of potential health risks from organic fluorine and PFAS in the products. (FAC ¶38.) Plaintiff alleges that the Product Line should include a disclosure stating: "Caution: This product contains organic fluorine which is a known indicator of per and polyfluoroalkyl substance ("PFAS"). Exposure to PFAS may cause serious health effects." (FAC ¶39.)

**B.    The Ubiquitous Presence of PFAS in the Environment.**

PFAS are a group of over 9,000 synthetic chemicals that have been used in industry and consumer products, worldwide, for over 70 years. (FAC ¶ 16.) PFAS are highly persistent in the environment. *Health & Saf. Code*, §108981(a)[2]; FAC ¶17. "Because of the widespread use of PFAS, they can be found in water, air, fish, and soil at locations across the nation and the globe" suggesting "virtually ubiquitous exposure of Californians to these highly toxic chemicals." *Health & Saf. Code*, §108981(e); FAC ¶21.

In support of her categorical assertion that all PFAS are harmful PFAS, Plaintiff refers to various statutes and articles, but fails to note that all but one of her

---

[2] Plaintiff's purchase was in January 2022. The statutes she cites in ¶34 as establishing allowable levels of PFAS in other types of products post-date her purchase. See *Health & Saf. Code*, §§108970 and 108981.5 (both effective Jan. 1, 2023). Plaintiff also relies heavily on §108981 (also effective Jan 1, 2023. And the only statute applicable to the sort of products at issue here, did not become effective until July 1, 2023. *Health & Saf. Code*, §108945.

DOCUMENT PREPARED
ON RECYCLED PAPER

cited references *post-date* her purchase.[3] Based on these later-published articles, Plaintiff jumps to the categorical conclusion that "[b]ecause PFAS chemicals are "forever chemicals" and accumulate in the human body, there is no safe manner or level of exposure to humans. (FAC ¶22.) Plaintiff also asserts that "[t]he EPA has found there is no safe level of PFAS." (FAC ¶ 34, fn. 7.) These assertions are not supported by the articles cited by Plaintiff.

As for the statutes cited for establishing thresholds for PFAS, none were in effect at the time Plaintiff purchased the product. The timeframe of the purchase is an important consideration because LNC must have had a duty to disclose and have omitted a material fact concerning the presence of PFAS in January 2022. Plaintiff cannot rely on present science and knowledge to infer a duty and omission two years prior.

In addition, the very sources Plaintiff cites note that not all PFAS are harmful. "Research suggests exposure to *some* PFAS *might* result in harmful health outcomes,

---

[3] The only referenced article that pre-dates Plaintiff's purchase is cited at FAC fn. 4 (Carol Potera, REPRODUCTIVE TOXICOLOGY: Study Associates PFOS and PFOA with Impaired Fertility, 117 ENV'T HEALTH PERSPECTIVES A148 (2009), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2679623/) which discusses two common perfluorinated chemicals, perfluorooctane sulfonate (PFOS) and perfluorooctanoate (PFOA) and notes that animal studies have associated both PFOS and PFOA with increased pregnancy losses and disruption in sex hormone homeo-status and sexual maturation. Plaintiff cites the article for its comment on animal studies, without clarifying that is not the subject of the current study or its findings. Plaintiff also does not contend that either PFOS or PFOA are present in the Product Line. These same substances, PFOS and PFOA, were the subject of an article Plaintiff originally cited in the Complaint, *EPA Announces New Drinking Water Health Advisories for PFAS Chemicals, $1 Billion in Bipartisan Infrastructure Law Funding to Strengthen Health Protections*, EPA (June 15, 2022, updated May 25, 2023) https://www.epa.gov/newsreleases/epa-announces-new-drinking-water-health-advisories-pfas-chemicals-1-billion-bipartisan. [Dkt. No. 1 at Ex. A, ¶ 19, fn 6.] Plaintiff no longer cites this article in the FAC, perhaps because it refutes the basic premise of Plaintiff's case: that all PFAS are bad at any level.

DOCUMENT PREPARED
ON RECYCLED PAPER

including cancer, increased cholesterol levels, and immune system effects." (See FAC fn. 2, https://www.cdc.gov/niosh/topics/pfas/default.html.) (emphasis added)). The fact that only some PFAS out of the 9000+ known PFAS are possibly harmful makes it all the more important for Plaintiff to have specified the particular PFAS she contends is present in the Product Line.

Plaintiff does not assert what harmful PFAS were allegedly found in the Product Line, *if any*. Plaintiff does not even allege to have tested for any particular PFAS. Instead, based solely on testing for organic fluorine as an "indicator" of both known and unknown types of PFAS (FAC ¶ 25), Plaintiff claims that the whole Product Line contains (unspecified) PFAS. (FAC ¶15.)

### C.    Plaintiff's Purchase and Testing Allegations.

Plaintiff claims to have been a frequent shopper of the Product Line and identifies the purchase of a Nuby Grip N' Sip Soft Spout Trainer Cup from a Target store in Pasadena, California in January 2022. (FAC ¶ 30.) Eleven months later, on December 12, 2022, another Trainer Cup was purchased for testing. (*Id.*) The testing on the random later purchased sample product was conducted on January 12, 2023. (*Id.*) The results indicated 18 ppm organic fluorine. (*Id.*)

On February 21, 2024, after filing this suit, Plaintiff commissioned a second round of testing on two more samples of the same product previously purchased and three other products in the Product Line. (FAC ¶32.) Those sample products were also tested for organic fluorine on February 27-28, 2024. Plaintiff does not allege whether the testing was done on the surface of the products or on the product material itself.

Plaintiff tested only four of the ten products in the defined Product Line, and none of the products were tested for any specific PFAS. Based on these testing results, Plaintiff concludes that *all* Products in the Product Line at issue contain PFAS as measured in total organic fluorine. (FAC ¶ 15.)

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff identifies three statutes, *Health & Safety Code* §§ 108970, 108981.5 and 109000 that will limit levels of "intentionally added" organic fluorine. (FAC ¶34.) None of these statutes apply to the products Plaintiff purchased, none of these limits were in effect at the time of Plaintiff's original purchase, and only one of the statutes applies to the product class at issue.

### III.    STANDARD FOR DISMISSAL UNDER RULE 12.

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in the complaint. To survive a motion to dismiss, a complaint must plead "enough facts to state a claim for review that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). This test requires a significant showing, and mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Even facts that "merely create[] a suspicion [of] a legally cognizable right of action" fall short of the plausibility standard and cannot survive a motion to dismiss. *Id.*

Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include sufficient facts to support a plausible claim under a cognizable legal theory. *Hodsdon v. Mars, Inc.,* 162 F.Supp.3d 1016, 1021 (N.D. Cal. 2016). Although the Court is required to accept all allegations of fact in the FAC as true and construe them in a light most favorable to Plaintiff, the Court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint. *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003).

A complaint can also be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing. "Article III, Section 2 of the Constitution limits federal courts to hearing

DOCUMENT PREPARED
ON RECYCLED PAPER

"actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). This limitation means the plaintiff must have standing to sue. *Id.* at 338.

Article III of the U.S. Constitution requires that Plaintiff aver "injury in fact— an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). The party seeking to establish standing "bears the burden of showing that [s]he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). This requirement is applicable to putative class representatives. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

In addition, "in allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud and mistake." Fed. R. Civ. P. 9(b). Plaintiff's UCL, FAL and CRLA claims are premised on fraud in the nature of false advertising and omissions and subject to the heightened pleading requirements of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009).

## IV.  ARGUMENT.

### A.  Plaintiff Fails To Establish Article III Standing To Pursue Her Claims.

To establish Article III standing, Plaintiff must show (i) that she suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiff "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.*

Plaintiff contends that she suffered an injury because she paid a premium,[4] or otherwise paid more for products from the Product Line than she would have absent

---

[4] Plaintiff states that she purchased the product from Target but there is no allegation that Target charged a premium. The Court can take judicial notice that in the United

DOCUMENT PREPARED
ON RECYCLED PAPER

LNC's alleged misrepresentation or omission concerning PFAS. (FAC ¶48(g).) Plaintiff assumes (contrary to the articles she specifically references in the FAC) that all PFAS are harmful, that the independent testing for organic fluorine confirms the presence of harmful levels of harmful PFAS, and that the presence of organic fluorine on four of eleven products establishes that PFAS are present in all products across the Product Line sold nationwide over four years. Not so.

At the end of the day, Plaintiff has not managed to plausibly allege that the particular product she purchased contained any PFAS when it left LNC's possession, let alone a harmful level of harmful PFAS. Plaintiff's conclusions and assumptions are speculative and do not support a plausible inference that the particular Trainer Cup Plaintiff purchased in January 2022 was tainted with harmful PFAS, much less that all products across 11 product lines are similarly tainted.

### 1. Plaintiff fails to allege facts plausibly establishing the existence of *any* PFAS, let alone harmful PFAS.

Plaintiff concludes that the products in LNC's Product Line "contain, among other things, PFAS as measured in total organic fluorine." (FAC ¶ 15.) Plaintiff has not identified any harmful PFAS present, or even potentially present, in the Product Line. Numerous cases have considered, and rejected, the same tactic Plaintiff employs here. That is, utilizing the presence of organic fluorine as a so-called proxy or indicator of potentially harmful PFAS.

In *Solis v. Coty, Inc.*, No. 22-CV-0400-BAS-NLS, 2023 WL 2394640, at *9 & *11 n.6 (S.D. Cal. March 7, 2023), the plaintiff asked the Court to infer, from organic fluorine testing, that there were other sources and types of PFAS in the Product other than the specific PFAS (PFTE) disclosed on Coty's label. While the Court was mindful of Solis' claim that it was not yet scientifically feasible to screen for discrete

---

States once a product leaves the possession of the manufacturer, the purchaser is free to charge whatever price it chooses. There is certainly no allegation in the FAC to the contrary.

DOCUMENT PREPARED
ON RECYCLED PAPER

PFAS chemicals, the inference was "not a viable method of demonstrating Article III standing." *Id.* at p. 18. "Even the lenient standard that controls this Motion prohibits this Court from making unwarranted inferences based on conclusory allegations unsupported by fact." *Id.*

Other cases are in accord. *See*, *e.g.*, *Andrews v. Procter & Gamble Co.,* No. EDCV1900075AGSHKX, 2019 WL 6520045, at *3 (C.D. Cal. June 3, 2019) (dismissing case alleging dental floss advertising that made no mention of PFAS was misleading, despite plaintiff having identified peer-reviewed, published test results showing measurable levels of fluorine in dental floss, because the floss was never tested for PFAS and "screening Defendant's dental floss for fluorine [only] indicates that PFASs might be present"); *Brown v. Coty, Inc.*, No. 22 CIV. 2696 (AT), 2023 WL 2691581 at *5 (S.D.N.Y. Mar. 29, 2023) (dismissing consumer fraud claims where plaintiff did not specify which PFAS were present in Lash Blast or at what levels.); *Lowe v. Edgewell Pers. Care Co.,* No. 23-CV-00837-AMO, 2024 WL 150758, *5 (N.D. Cal. Jan. 12, 2024) ("these allegations are devoid of the factual content necessary to nudge Plaintiffs' claims, based on the theory that Edgewell's tampons contain PFAS, from possible to plausible"); *Onaka v. Shiseido Americas Corp.*, No. 1:21 Civ. 10665 PAC, 2024 WL 1177976, at *3 (S.D.N.Y. Mar. 19, 2024) ("[Plaintiffs] have failed to allege plausibly the Products they purchased contained PFAS and, accordingly, lack standing to bring this suit."

Although the FAC sets forth the testing results for organic fluorine (FAC ¶¶ 30-32), Plaintiff does not allege any facts to correlate the levels of organic fluorine to the presence of any PFAS, let alone a particular harmful PFA or any indication of the level of PFAS that might be present—harmful or not. The FAC contains no allegation as to whether the organic fluorine may be indicative of natural sources or is largely, if not exclusively, linked to PFAS. *Lowe v. Edgewell Pers. Care Co.*, *supra*, 2024 WL 150758, at *5.

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff seemingly acknowledges this issue, noting that "identification of organic fluorine in industry and consumer products has also recently emerged as an indicator that encompasses the total content of both known and unknown types of PFAS…" (FAC ¶ 25.) As noted, the testing referenced in the FAC post-dates Plaintiff's purchase by two years and involves products other than that which was purchased by Plaintiff. Not only is there nothing to indicate that the ppm levels of organic fluorine in the tested products are coextensive with the presence of any particular PFAS, and certainly not an unspecified harmful PFAS, there is nothing to indicate that the Product purchased by Plaintiff even had organic fluorine.

Instead, Plaintiff asks the Court to make implausible inferences upon implausible inferences that: (1) given the levels of organic fluorine, there must be some infinitesimal amount of harmful PFAS in the tested products, (2) that the presence of organic fluorine in the tested products, infers PFAS must also have been present in the product actually purchased by Plaintiff two years prior, (3) that the inferred PFAS was potentially harmful, and (4) infer a sufficient quantity to make it harmful. That is simply too many inferences to push the claims over the plausibility threshold.

Because Plaintiff has failed to plausibly allege the presence of any specific, harmful PFAS in LNC's products at any level, the FAC should be dismissed for lack of Article III standing.

**2.    Even if the Court infers that organic fluorine is an indicator of harmful PFAS, Plaintiff fails to plausibly connect her purchase to the indirect testing conducted two years later.**

The claims in the FAC are substantively similar to and fail for the same reasons as the claims brought in *Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665-PAC, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) and 2024 WL 1177976, at *1 (S.D.N.Y. Mar. 19, 2024). In *Onaka*, the plaintiffs sued under the same California statutes at issue here, the UCL, FAL and CLRA. The *Onaka* plaintiffs asserted that the beauty

DOCUMENT PREPARED
ON RECYCLED PAPER

products they purchased contained PFAS based on third-party testing which detected the chemicals in each type of product plaintiffs purchased. *Onaka*, 2023 WL 2663877, at *2. Plaintiffs claimed that the defendant committed fraud by marketing its products as "natural" even though they were contaminated with PFAS. *Id*. The court found that plaintiffs had not alleged sufficient facts to establish that the products they actually purchased were contaminated, and thus that they had suffered an injury-in-fact. *Id*. at *5. After granting leave to amend, the court again dismissed the claims. *Onaka*, 2024 WL 1177976, at *3.

Like the Plaintiff here, the *Onaka* plaintiffs alleged standing indirectly based on testing of products in the same product line as their purchases. When a plaintiff does not test their own purchase, but relies on the indirect method, they must "meaningfully link" the tests results to their own purchases by demonstrating that the tests occurred "reasonably near in time" to their own purchases and establishing the presence of PFAS so widespread as to render it plausible that any plaintiff purchased a mislabeled product at least once. *Id.* at *2 (quoting *Clinger v. Edgewell Personal Care Brands, LLC*, No. 21 Civ. 1040, 2023 WL 2477499, at *4 (D. Conn. Mar. 13, 2023)).

The same is true here. Plaintiff purchased one Trainer Cup in January 2022 that was admittedly not tested. She does not allege the purchase price or any details, the lot number of the product purchased, or a manufacture date. Eleven months later, on December 12, 2022, another Trainer Cup was purchased for testing. (FAC ¶ 30.) The testing on the random, later purchased, sample product was conducted on January 12, 2023. (*Id.*) The results indicated 18 ppm organic fluorine. (*Id.*)[5]

Over a year later, Plaintiff commissioned testing on two more samples of the type of product she purchased and three other products in the Product Line. (FAC ¶

---

[5] This is far below the 100 ppm threshold for "regulated PFAS" set forth in *Health & Saf. Code*, § 108945 that only became effective *after* Plaintiff's initial testing.

DOCUMENT PREPARED
ON RECYCLED PAPER

32.) Those tests revealed the presence of organic fluorine in widely varying amounts. (*Id.*) But ultimately, the indirect testing of representative products for organic fluorine two years after the fact is not meaningfully linked to Plaintiff's own purchase. The testing was not reasonably close in time to Plaintiff's own purchase to allow for the inference that PFAS were present in the product Plaintiff purchased. And the limited testing for organic fluorine does not establish the presence of PFAS, much less harmful PFAS, across the Product Line, over the span of 2 years.

In sum, Plaintiff purchased six sample products from two southern California locations and concludes that not only did the one Trainer Cup Plaintiff purchased two years prior contain PFAS, but that each and every one of the thousands of products LNC sells throughout California and the rest of the United States *also* contain PFAS. This leap in logic is simply untenable based upon the paucity of the allegations in the FAC.

### 3. The FAC does not set forth sufficient facts to establish an injury based on a price premium theory.

Plaintiff alleges that she paid a premium or paid more for the products than she otherwise would have, absent the alleged omissions regarding the presence of PFAS. Other than this bare conclusory statement, there are no facts to support the idea that Plaintiff actually paid a premium or paid more than she would have for a comparable product that did contain PFAS.

Where, like here, the claims are premised on a price premium theory, Plaintiff still must plead enough facts to make it plausible that she did indeed suffer the sort of economic injury that would entitle her to relief. *Onaka v. Shiseido Am's Corp.*, *supra*, 2024 WL 1177976 [pp. 8]. "The bare recitation of the word 'premium' does not adequately allege a cognizable injury." *Naimi v. Starbucks Corp.*, 798 F. App'x 67 (9th Cir. 2019). Plaintiff did not allege how much she paid, how much she would have paid for it absent the alleged deception, or whether the defendant (as opposed

to a third-party distributor) [6] was responsible for the alleged overpayment, or any other details regarding the price premium. *Id.; see also Cahen v. Toyota Motor Corp.,* 717 F. App'x 720, 723-24 (9th Cir. 2017) (upholding dismissal of UCL, CLRA and FAL claims because the plaintiffs "have only made conclusory allegations that their cars are worth less and have not alleged sufficient facts to establish Article III standing"); *Babaian v. Dunkin' Brands Grp., Inc.,* 2018 WL 11445613, at *7 (C.D. Cal. June 12, 2018) (finding plaintiff failed to plead economic injury even though he listed several competitors offering the same products with the "real" ingredient, which nonetheless failed to establish "that a price premium attaches to the Class Products due to the alleged misrepresentation. That is, the mere fact that competitors sell products with real blueberry and maple ingredients is inapposite to whether Dunkin' extracted a price premium by selling the Class Products with artificial blueberry and maple while representing that they contain blueberry and maple."); *Horti v. Nestle HealthCare Nutrition, Inc.,* 2022 WL 2441560, at *8 (N.D. Cal. July 5, 2022) ("Plaintiffs announce that they have suffered injury based on their payment of a 'premium price' for a product that did not work as advertised and that they would not have paid for had they known the truth, but this is insufficient to adequately allege a cognizable injury.... [P]laintiffs' allegations lack any detail about the prices they paid or the differences between Boost Glucose Control products and non-premium products. Plaintiffs thus fail to make out a concrete injury. Plaintiffs lack standing for any of their claims and the SAC must be dismissed.").

Plaintiff does not allege what she paid for the one product she bought, what she would have paid had the alleged PFAS been disclosed, or what other products

---

[6] Plaintiff states in the FAC that the product in question was purchased from third party Target.  Even if LNC charged a premium for its product (which it assuredly did not) there is no allegation that Target charged a premium.

DOCUMENT PREPARED
ON RECYCLED PAPER

might have been available at a lower price. The conclusory facts regarding the price premium theory are insufficient to establish standing.

**B.** **Even If Plaintiff Established Article III Standing, Plaintiffs Consumer Fraud Claims Are Not Pled With Sufficient Particularity.**

The UCL, CLRA, and FAL, under which Plaintiff's first three claims are brought, all prohibit unlawful, unfair, or fraudulent business practices. *Ebner v. Fresh, Inc.*, 818 F.3d 799, 804 (9th Cir. 2016). Plaintiff's UCL, FAL and CLRA claims are premised on the alleged "omissions and non-disclosures" of the existence and health risks of "organic fluorine and PFAS in the products in the Product Line…" (FAC ¶¶ 77, 92, 107.)

**1.** **Plaintiff has failed to meet the Rule 9(b) heightened pleading standard for fraud-based claims.**

It is well settled that a federal court examines state law claims to determine whether the elements of fraud have been pled with the required specificity of Federal Rule of Civil Procedure 9(b), irrespective of whether state law is the substantive law at issue. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "As plaintiffs' claims under the CLRA, FAL, and UCL all sound in fraud, they must plead them with particularity." *Brown v. Madison Reed, Inc.*, No. 22-16415, 2023 WL 8613496 (9th Cir., Dec. 13, 2023) [pp. 2] Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged. *Ebeid ex Rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

Plaintiff's UCL, FAL and CLRA claims are governed by the "reasonable consumer" standard. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). Under the reasonable consumer standard, Plaintiff must show that members of the public are likely to be deceived. *Id.* (internal citations and quotations omitted). This requires more than a mere possibility that LNC's website "might conceivably be

- 17 -

misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*, 838 F.3d at 965 (*quoting Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003)). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* "[I]f common sense would not lead anyone to be misled," the claim may be dismissed. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020).

Plaintiff's allegations fall far below Rule 9(b)'s heightened pleading requirements. Although the FAC includes headings for the who, what, when, where, how, why and injury, the allegations themselves are not particularized and are wholly conclusory.

### 2. Plaintiff has failed to allege an actionable omission under the UCL, FAL and CLRA.

Plaintiff contends that LNC "omitted material facts that the products in the Product Line contain organic fluorine indicative of PFAS that have significant health risks." (FAC ¶ 48(e).) Actionable omissions under California consumer protections laws must be (1) contrary to a representation actually made by the defendant, or (2) an omission of a fact the defendant was obliged to disclose. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). California courts have generally rejected a broad duty to disclose. *Id.*

### a) There is no omission contrary to any representation actually made by LNC.

Plaintiff refers to marketing and advertising materials, however the only materials actually identified in the FAC are excerpts from LNC's website. (FAC ¶ 10.) LNC's website provides: "Luv n' Care® specifies to our manufacturers/suppliers that they are only allowed to use plastics, color pigments and inks that do not contain BPA, Phthalates, or other suspected harmful chemicals in manufacturing Nuby branded products. In addition, our products meet all

governmental regulations including FDA, CPSC, CPSIA and European standards/regulations." (FAC ¶ 10 on p. 6.)

Plaintiff repeatedly misconstrues this language throughout the FAC, contending that LNC *actually* promotes its products as "free of suspected harmful chemicals." Where? The interpretation of LNC's language must be reasonable. In the end, the complaint fails because it is attempting to put words into the manufacturer's mouth. *See e.g., Matthews v. Polar Corp.*, No. 22-CV-649, 2023 WL 4534543, at *9 (N.D. Ill. Mar. 22, 2023) ("In the end, the complaint fails because it is attempting to put words into the manufacturer's mouth."). BPA is the only thing that LNC states is absent from its Sippy cups and Plaintiff does not contend otherwise.

The LNC website does not make any representations, of any kind, anywhere, that have anything to do with PFAS. LNC never advertised the Product Line as free of PFAS and Plaintiff has presented nothing that mentions PFAS *at all*. Ultimately, LNC only represented what it tells its manufacturers/suppliers. And Plaintiff does not (and cannot) allege any facts to show that LNC's representation about its specifications to its manufacturers/suppliers is false in any way.

No matter how many times Plaintiff repeats the same inaccurate statement in the FAC, Plaintiff cannot rewrite the language on the website to establish a representation that is not actually there. No reasonable consumer, reading the above quoted statement from LNC's website about what it tells its manufacturers, would be misled by that representation in the manner Plaintiff contends. This is particularly true considering that there is no express representation (despite Plaintiff's inaccurate statement to the contrary) regarding the existence or nonexistence of harmful substances or PFAS in the Product Line.

Moreover, Plaintiff does not offer any facts to explain why a reasonable customer would interpret the above-language to mean that the Product Line was free of PFAS. *See generally*, *Harris v. McDonald's Corp.*, No. 20-cv-06533-RS, 2021

DOCUMENT PREPARED
ON RECYCLED PAPER

WL 2172833 (N.D. Cal. Mar. 24, 2021) (dismissing UCL, CLRA, and FAL claims for failure to allege "a factual foundation" as to what reasonable consumers believe when plaintiff's assertion that McDonald's use of the word "vanilla" was misleading was plainly a legal conclusion that was not deemed true even on a motion to dismiss). Plaintiff offers no foundational facts to demonstrate why any reasonable customer would reasonably believe, from the language above, that the product was free of PFAS.

Because LNC never claimed that its products were "free of suspected harmful materials", Plaintiff's claim that LNC omitted facts that the products in the Product Line contained organic fluorine indicative of both harmful and non-harmful PFAS is a non-starter.

### b) There was no omission of a fact that LNC was obliged to disclose.

A defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, central to the product's function, and the plaintiff alleges one of the four *LiMandri* factors.[7] The *LiMandri* factors are (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts. *Id.*; see also *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012); *Hodsdon, supra,* 891 F.3d at p. 868 (affirming dismissal of CLRA, UCL, and FAL omission claims for failure to allege facts establishing a duty to disclose).

---

[7] *See Rodriguez v. Mondelez Global, LLC*, No. 23-cv-00057-DMS-AHG, 2023 WL 8115773. (S.D. Cal., Nov. 22, 2023) [pp. 17] (internal citations and quotations omitted) (granting the motion to dismiss with respect to Plaintiffs' CLRA, FAL, and UCL claims based on the fraud-by-omission theory).

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff does not allege that the Product Line creates an unreasonable safety hazard or a defect that is central to the product's function. At best, Plaintiff alleges that the existence of organic fluorine "implicates health and safety concerns", which is far short of a present and unreasonable hazard. And there is no mention at all of a defect in any product's central function.

Even if the unsubstantiated presence of PFAS is deemed central to the product's function (it is not), Plaintiff must still allege a *LiMandri* factor. There are simply no allegations that might support this. Plaintiff does not allege any fiduciary duty owed by LNC. And Plaintiff alleges contradictory facts regarding the exclusive knowledge factor. She contends that LNC had exclusive knowledge of the "materials, ingredients and chemicals." (FAC ¶44.) But she contradicts that allegation by asserting that all products manufactured, marketed, advertised, and sold have the "same composition of materials and were manufactured in the same place and manner" therefore "organic fluorine was present in all products in the Product Line. (FAC ¶36.) LNC cannot have exclusive knowledge since Plaintiff asserts sufficient information on composition of materials and manufacturing processes to conclude that "organic fluorine continues to be present in all products in the Product Line currently being manufactured, marketed, advertised and sold" by LNC. (FAC ¶36.)

Plaintiff also concludes, with zero factual support, that LNC knew, or should have known, to test for organic fluorine and PFAS prior to and at the time Plaintiff purchased the product in January 2022. (FAC ¶ 48(b) and (c).) Based on what? In January 2022 there was no statute in effect setting a threshold for PFAS or mandating disclosure of PFAS. There are no facts alleged that might render the presence of PFAS a "material fact" mandating disclosure in January 2022. Plaintiff does not allege any facts *at all* that might establish that LNC had knowledge, and therefore a duty to disclose, that its Products could test positive for PFAS by the time they were sitting on store shelves. And because Plaintiff has wholly failed to identify a single

DOCUMENT PREPARED
ON RECYCLED PAPER

harmful PFAS allegedly present in the Product Line, there is no basis for inferring that LNC suppressed any facts regarding the content of the Product Line.

### 3.    Plaintiff has failed to allege facts showing reasonable reliance.

Claims under CLRA, FAL, and UCL follow the reasonable consumer standard, which requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).

As detailed above, Plaintiff's conclusion that the Product Line was free of PFAS is unreasonable. This is particularly true considering "Plaintiff and other consumers do not understand what organic fluorine and PFAS are or their potential risks." (FAC ¶41.) If Plaintiff did not know what PFAS were, she could not have reasonably relied on the LNC website FAQ as representing the Product Line to be PFAS-Free. In fact, the allegation that she viewed the website and relied on its contend is completely conclusory. (FAC ¶ 12.) There were no representations on LNC's website that would make a reasonable consumer think the Product Line is free of all PFAS.

### 4.    There are no affirmative misrepresentations alleged.

To the extent Plaintiff contends that the claim is premised on affirmative misrepresentation rather than an omission, Plaintiff has failed to satisfy Rule 9(b). There are no allegations specifically setting forth an affirmative misrepresentation separate from the purported omission discussed above.

### C.    The Claim For Unjust Enrichment Is Not Cognizable Under California Law And Is Duplicative Of The Other Claims.

California does not recognize a cause of action for unjust enrichment. *Hooked Media Grp. v. Apple Inc.*, 55 Cal.App.5th 323, 336 (2020) (citing *Melchior v. New Line Productions, Inc.,* 106 Cal.App.4th 779, 793 (2003)). "Rather, unjust enrichment is a theory that permits recovery on other recognized causes of action, including plaintiffs' UCL and CLRA claims." *In re Conagra Foods Inc.*, 908 F. Supp.

DOCUMENT PREPARED
ON RECYCLED PAPER

2d 1090, 1114 (C.D. Cal. 2012) (dismissing plaintiff's unjust enrichment claim under California law with prejudice). In addition, it is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law. *Mort v. United States,* 86 F.3d 890, 892 (9th Cir. 1996).

The same is true here. Not only is unjust enrichment not a recognized cause of action, but restitution is a theory of recovery under Plaintiff's UCL, FAL, and CLRA claims (FAC ¶¶89, 102, 121) and is expressly a remedy sought for these claims. (FAC at p. 40 at lines 12 and 20-21.) Even if the claim was cognizable, it is clear, given Plaintiff's CLRA, FAL, and UCL claims, that Plaintiff has an adequate remedy at law. Accordingly, this Court should dismiss Plaintiff's unjust enrichment claim with prejudice.

## V.   CONCLUSION

Based on the foregoing, LNC respectfully requests that the Court enter an order in its favor and dismiss, for the failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6), all causes of action set forth in Plaintiff's FAC.

Dated: April 11, 2024

**FERNALD & ZAFFOS**

By:   */s Brandon C. Fernald*
Brandon C. Fernald

Attorneys for Defendant,
LUV N' CARE, LTD.

DOCUMENT PREPARED
ON RECYCLED PAPER

**<u>CERTIFICATE OF SERVICE</u>**

I, Jordan Patronete, declare that I am over the age of eighteen years and not a party to this action. I am employed in Los Angeles County, and my business address is: Fernald & Zaffos APC, 15910 Ventura Blvd., Suite 1702, Encino, California 91436.

On **April 11, 2024**, I hereby certify that a true and complete copy of the foregoing documents:

**DEFENDANT LUV N' CARE, LTD.'S NOTICE OF MOTION AND**

**MOTION TO DISMISS FIRST AMENDED COMPLAINT;**

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT**

have been served by forwarding said copy by electronic submission through my email the documents listed above to:

| | |
|---|---|
| Paul D. Stevens, Esq.<br>Lauren A. Bochurberg, Esq.<br>**STEVENS, LC**<br>1855 Industrial Street, Suite 518<br>Los Angeles, California 90021<br>Tel: (213) 270-1211<br>Fax: (213) 270-1223<br>Email: pstevens@stevenslc.com<br>     lbochurberg@stevenslc.com | *Attorneys for Plaintiff,*<br>*Brooke Richards* |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  **April 11, 2024**

_____
Jordan Patronete

DOCUMENT PREPARED
ON RECYCLED PAPER