1   Paul D. Stevens (Cal. Bar. No. 207107)
    pstevens@stevenslc.com
2   Lauren A. Bochurberg (Cal. Bar. No. 333629)
    lbochurberg@stevenslc.com
3   **STEVENS, LC**
    1855 Industrial Street, Suite 518
4   Los Angeles, California 90021
    Tel: (213) 270-1211
5   Fax: (213) 270-1223
6   *Attorneys for Plaintiff and the Proposed Class*

7

8               **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIVISION**

10

11  BROOKE RICHARDS, individually and     Case No. 2:24-cv-00956-FMO-ADS
    on behalf of all others similarly situated,
                                           **PLAINTIFF'S OPPOSITION TO**
12                                         **DEFENDANT'S MOTION TO**
         Plaintiffs,                       **DISMISS PLAINTIFF'S FIRST**
13                                         **AMENDED CLASS ACTION**
         v.                                **COMPLAINT**
14
    LUV N' CARE, LTD.; and DOES 1          Date:   Thursday May 16, 2024
15  through 10, inclusive,                 Time:   10:00 am
                                           Dept:   Courtroom 6D
16       Defendants.                       Judge:  Judge Hon. Fernando M. Olguin

17

18

19

20

21

22

23

24

25

26

27

28

    **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   STANDARD OF REVIEW ..................................................................................... 3

III.  ARGUMENTS ......................................................................................................... 3

  A.   Plaintiff Has Established Article III Standing. ..................................................... 3

    1.   Defendant' Argument that Plaintiff fails to allege facts plausibly establishing the existence of any PFAS, let alone harmful PFAS is Incorrect and a False Issue. ........................................ 5

    2.   Plaintiff Has Not Failed To Plausibly Connect Her Purchase To The Testing. .................. 8

    3.   Plaintiff has Sufficiently Pled Economic Injury. ........................................... 11

  B.   Plaintiff Properly Pleads Consumer Fraud Claims ............................................. 13

    1.   Plaintiff's Fraud Based Claims Are Pled With The Specificity Required By Rule 9(b). 13

    2.   Plaintiff's Omission Allegations are Actionable. ........................................... 15

      a.   The Alleged Omission Is Contrary To A Representation Made By Defendant ......... 15

      b.   Defendant Omitted Facts It Was Obliged To Disclose .............................................. 16

        1.   Defendant Had Exclusive Knowledge Of Material Facts Not Known Or Reasonably Accessible To The Plaintiff ............................................ 17

        2.   Defendant Makes Partial Representations That Are Misleading Because Some Other Material Fact Has Not Been Disclosed ............................ 18

        3.   The Undisclosed Information Implicates Safety Concerns That A Reasonable Consumer Would Find Material. ........................................ 19

    3.   Plaintiff Sufficiently Alleged Facts Showing Reliance ................................. 20

    4.   Plaintiff Alleged Affirmative Misrepresentations. ........................................ 20

IV.   PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT ................... 21

V.    CONCLUSION .................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

Onaka v. Shiseido Americas Corp., 2024 WL 1177976 (S.D.N.Y. Mar. 19, 2024)...........9, 11, 12, 13

Albright v. Oliver, 510 U.S. 266 (1994)...................................................................................... 6

Anderson v. Apple Inc., 500 F. Supp. 3d 993 (N.D. Cal. 2020)...................................................... 20

Andrews v. P&G, 2019 U.S. Dist. LEXIS 211567, (C.D. Cal. June 3, 2019) .........................9asghari

Asghari v. Volkswagen Grp. of Am., Inc., 42 F.Supp.3d. 1306 (C.D. Cal. 2013) ........................... 16

Ashcroft v. Iqbal (Iqbal), 550 U.S. 662 (2009).............................................................................. 6

Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753 (9th Cir. 2015) .................................................... 24

Banh v. Am. Honda Motor Co., 2019 U.S. Dist. LEXIS 230700 (C.D.  Cal. December 17, 2019)... 17

Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544 (2007) ...................................................... 6

Berg v. Popham, 412 F.3d 1122 (9th Cir. 2005).......................................................................... 6

Brown v. Coty, Inc. 2023 WL 2691581 (S.D.N.Y Mar. 29, 2023) .................................................. 9

Bruton v. Gerber Prods. Co., 2014 U.S. Dist. LEXIS 5493 (N.D. Cal. Oct. 2, 2013) ...................... 17

Cohen v. Ainsworth Pet Nutrition LLC, 2020 U.S. Dist. LEXIS 246315 (C.D. Cal October 26, 2020) ....................................................................................................................................... 14

Daugherty v. American Honda Motor Company, Inc., 144 Cal.App.4th 824 (2006).) ..................... 22

Dawood v. Gamer Advantage LLC, 2022 U.S. Dist. LEXIS 138774 (E.D. Cal. August 4, 2022) ..  18, 19, 22

Doe v. SuccessfulMatch.com, 70 F. Supp. 3d 1066 (N.D. Cal. Sept. 30, 2014) ............................. 21

Eisen v. Porsche Cars N. Am., Inc., 2012 WL 841019 (C.D. Cal. Feb. 22, 2012)...................... 16,17

Erickson v. Pardus, 551 U.S. 93-94 (2007) ................................................................................. 6

Grausz v. Hershey Co., 2023 U.S. Dist. LEXIS 172300 (S.D. Cal. September 9, 2023) .................. 12

Hamman v. Cava Grp., Inc., 2023 U.S. Dist. LEXIS 85634 (S.D. Cal. February 8, 2023) ....... 7, 9, 18

Harris v. McDonald's Corp., 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) ................................. 19

Hinojos v. Kohl's Corp., 718 F.3d 1098 (9th Cir. 2013) .............................................................. 14

Hodson v. Mars, Inc. 891 F.3d 857 (9th Cir. 2018)............................................................18, 19, 21

Jenkins v. McKeithen, 395 U.S. 411 (1969)................................................................................. 6

Kanan v. Thinx Inc., 2021 U.S. Dist. LEXIS 191225 (C.D. Cal. June 23, 2021)............9, 11, 17, 24

Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 246 P.3d 877 (Cal. 2011) ................................. 14

Lewis v. Rodan & Fields, LLC, 2019 U.S. Dist. LEXIS 32470 (N.D. Cal. 2019)..................... 20, 22

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) ........................................................................... 6

*Lowe v. Edgewell Pers. Care Co.*, 2024 U.S. Dist. LEXIS 7238 (N.D. Cal. Jan. 12, 2024) ............... 9

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003, (1992) ........................................................ 7

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...................................................... 7, 12

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) .............................................. 7, 15

*Mui Ho v. Toyota Motor Corp.*, 931 F.Supp.2d 987 .................................................... 22

*Naimi v. Starbucks Corp.*, 798 F. App'x 67 (9th Cir. 2019) ......................................... 14

*Onaka v. Shiseido Americas Corp.*, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) ................ 9, 12, 13

*Pan v. Master Lock Co., LLC*, 2023 U.S. Dist. LEXIS 82284 (C.D. Cal. May 10, 2023) ............... 15

*Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 U.S. Dist. LEXIS 46197 (N.D. Cal. Mar. 16, 2020) ............................................................................................ 12

*Santillan v. Am. Honda Motor Co., Inc.*, 2023 U.S. Dist. LEXIS 180205 (C.D. Cal. June 22, 2023).. ............................................................................................ 16

*Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520 (N.D. Cal. 2018) ................................. 15

*Solis v. Coty, Inc.*, 2023 U.S. Dist. LEXIS 38278 (S.D. Cal. March 7, 2023).................................. 8

*United States v. Martinez*, 967 F.2d 1343 (9th Cir. 1992) .............................................. 12

*Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837 (N.D. Cal. Jan. 17, 2018) .......................... 7, 11, 15, 19

**Statutes**

Federal Rule of Civil Procedure Rule 15 ............................................................. 6

Federal Rule of Civil Procedure Rule 9(b) ............................................................. passim

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

## I.    <u>INTRODUCTION</u>

This is an important consumer protection matter that concerns two issues: 1) the unlawful omission and non-disclosure of information that is a material concern to consumers—the existence of, and potential health risks from, *organic fluorine* in children's bottles and sippy cups produced, marketed and sold by Luv N' Care, Ltd ("Defendant") under the brand name "Nuby" and specifically, eleven (11) products in the Nuby Sippy Cup Soft Spout Product Line ("Products" or "Product Line"); and 2) false and misleading marketing of the Products as high-quality, free of suspected harmful chemicals, kind to delicate gums and precious teeth and sustainable given the existence of, and potential health risks from, the presence of *organic fluorine* in the Products in the Product Line. (First Amended Class Action Complaint ("FAC")(Dkt. 10 ¶4).  As set forth in the FAC:

- The Products contain per- and polyfluoroalkyl substances, a class of chemicals known as "PFAS", *as measured in organic fluorine*. (FAC ¶19).
- PFAS are known as "forever chemicals" because they are highly toxic and extremely resistant to degradation in the natural environment and human bodies. (FAC¶22).
- The U.S. Centers for Disease Control and Prevention outlines several health effects associated with PFAS exposure, including cancer, liver damage, and decreased fertility. (FAC¶20).
- The California legislature has declared that "PFAS have been linked by scientific, peer-reviewed research to severe health problems." (FAC¶19).
- Under the California Health & Safety Code, the presence of PFAS is determined and measured by *organic fluorine*. (FAC¶23).
- Plaintiff commissioned eleven (11) tests on six (6) Products in the Product Line that confirmed the existence of *organic fluorine* in each of the Products tested at dangerous levels, including the same Products as those purchased by Plaintiff.  (FAC¶¶26,27,28,29,30).

1

- The FAC alleges the products purchased by Plaintiff have the same composition of materials as the Products that were, and are, currently being manufactured and sold by Defendant during the proposed Class Period and the Products tested by Plaintiff. (FAC¶7,26,36).

- The FAC further alleges that because PFAS chemicals are "forever chemicals" and accumulate in the human body, there is in fact no safe manner or level of exposure to humans and alleges "[t]he Nuby products are particularly concerning given the fact that an infant or toddler is being exposed to both the spout and lining and using repeatedly several times a day orally nursing for hours upon use" and thus, "implicates health and safety concerns that a reasonable consumer would find material" (FAC¶34,35).

However, the marketing, packaging and labeling of the Products omit and do not provide any disclosure of the existence of, and potential health risks from, *organic fluorine* or PFAS in the Products. (FAC¶38,47,48(a)(e)).  Further, Defendant also promotes the Nuby brand and the Products in the Product Line as high-quality, free of suspected harmful chemicals, kind to delicate gums and precious teeth and sustainable. (FAC¶10).  Given the existence of *organic fluorine* in the Products, the FAC alleges Defendant's marketing of the Product Line as high-quality, free of suspected harmful chemicals, kind to delicate gums and precious teeth and sustainable is false and misleading. (FAC¶4,42).

Prior to filing this lawsuit, Plaintiff served Defendant with pre-lawsuit notice stating Plaintiff's concerns and requested Defendant address these issues.  Defendant ignored it. (FAC¶50,117).  Now, Defendant seeks dismissal of each cause of action set forth in the FAC based on the following grounds:

(1)   Plaintiff fails to establish Article III standing. (Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss First Amended Class Action Complaint ("Memo.") at10:17).

(2)    Plaintiff has failed to allege an actionable omission. (<u>Id</u>. p.18:12).

(3)    Plaintiff has failed to allege facts showing reasonable reliance. (<u>Id</u>. p.22:3).

(4)    There are no affirmative misrepresentations alleged. (<u>Id</u>. p. 22:17).

(5)    The claim for unjust enrichment is not cognizable under California law and duplicative of the other claims. (<u>Id</u>. p.22:22).

As demonstrated herein, there is no basis to grant Defendant's motion to dismiss on any issue.

## II.    <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. <u>Bell Atl. Corp. v. Twombly</u> (<u>Twombly</u>), 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct.  <u>Ashcroft v. Iqbal</u> (<u>Iqbal</u>), 550 U.S. 662, 678 (2009). In considering whether to dismiss a complaint, the Court must accept the allegations of the complaint as true, <u>Erickson v. Pardus</u>, 551 U.S. 93-94 (2007); <u>Albright v. Oliver,</u> 510 U.S. 266, 267 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Berg v. Popham</u>, 412 F.3d 1122, 1125 (9th Cir. 2005). If the Court finds a claim is deficient, leave to amend shall be freely given under Rule 15. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000).  Leave to amend should only be denied where "the court determines that the pleading could not possibly be cured by the allegation of other facts. (Id.).

## III.    <u>ARGUMENTS</u>

### A.    **Plaintiff Has Established Article III Standing.**

Defendant's first argument is that Plaintiff fails to establish Article III standing to pursue her claims. (<u>See</u> Dkt.13, Memo.at10:17).

To establish Article III standing, a plaintiff must demonstrate: (1) an injury-in-fact via "an invasion of a legally protected interest which is (a) concrete and

particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—that the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability—that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-610 (1992) (internal citations and quotations omitted).

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." (Id.). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (Id.) citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1014 n.3 (1992).

To plead "injury in fact", "[a] 'quintessential injury-in-fact' occurs when plaintiffs allege that they 'spent money that, absent defendants' actions, they would not have spent.'" Zeiger v. WellPet LLC, 304 F. Supp. 3d 837, 846 (N.D. Cal. Jan. 17, 2018) (quoting Maya v. Centex Corp., 658 F.3d 1060, 1069 (9th Cir. 2011)). In Hamman v. Cava Grp., Inc., 2023 U.S. Dist. LEXIS 85634, *11-13 (S.D. Cal. February 8, 2023), the Court found Plaintiffs sufficiently pled economic injury by asserting that they would not have purchased Defendant's products or would have paid less for them had they known the truth about the products—that their packaging contained "*heightened levels of organic fluorine*," *an indicator of PFAS*. (Id. at 12) (emphasis added).

The allegations in the FAC meet these standards. Plaintiff has alleged that "Plaintiff and the Class Members relied on Defendant's omissions and false, deceptive, and misleading representations **and would not have purchased the products** from the Product Line **if not for the omissions and false, deceptive, and misleading representations** and marketing by Defendant about the products in the

Product Line and the Nuby brand." (FAC ¶¶48(g),63,82,96,114)(emphasis added). These allegations meet the standards for pleading injury in fact.

Defendant asserts three (3) arguments it claims "serves to destroy Article III standing." (See Dkt.13, Memo.at2:10-11).  As set forth below, each should be rejected.

**1. Defendant' Argument that Plaintiff fails to allege facts plausibly establishing the existence of any PFAS, let alone harmful PFAS is Incorrect and a False Issue.**

Defendant's first argument that the FAC should be dismissed for lack of Article III standing is that **"**Plaintiff has failed to plausibly allege the presence of any specific, harmful PFAS in LNC's products at any level.  (See Dkt.13, Memo.at11:13,13:18-19). In support of this contention, Defendant asserts three arguments.  The first is that Defendant contends "numerous cases have considered, and rejected, the same tactic Plaintiff employs here" – "utilizing the presence of organic fluorine as a so-called proxy or indicator of potentially harmful PFAS."  (See Dkt.13, Memo.at11:15-17). This argument should be rejected for three (3) reasons.

First, Defendant's argument does not accurately state the basis of Plaintiff's claims. As stated in the FAC, the issue alleged in this matter is not the existence of identifiable PFAS, but "the omission and non-disclosure … of *organic fluorine*. (FAC¶4).   Therefore, the issue is not *organic fluorine* as a *proxy*, but the existence of *organic fluorine* itself.

Second, not one case cited by Defendant rejected utilizing the presence of *organic fluorine* as a proxy for PFAS.  For example, in <u>Solis v. Coty, Inc.,</u> 2023 U.S. Dist. LEXIS 38278, *26-27 (S.D. Cal. March 7, 2023), Defendants' product contained and the package disclosed one type of PFA – PTFE. (<u>Id</u>.).  Plaintiff argued the disclosure was both incomplete and insufficient because the exact *source of organofluorine* cannot be determined to solely come from [PTFE] and it was from this argument the Plaintiff asked the Court to infer there are other sources and types of

PFAS in the Product other than PTFE. (Id.).  From that the Court could not a draw an inference. (Id.).  This had nothing to do with rejection of *organic fluorine* as a proxy.

In Andrews v. P&G, 2019 U.S. Dist. LEXIS 211567, (C.D. Cal. June 3, 2019), the Court reasoned that Plaintiffs relied on a PFAS Study *hypothesizing* that Defendant's Oral-B Glide might be a potential exposure for PFAS, but overstated the findings of the study. (Id. at 9). This had nothing to do with rejection of *organic fluorine* as a proxy.

In Brown v. Coty, Inc. 2023 WL 2691581 (S.D.N.Y Mar. 29, 2023), Plaintiffs relied on a Notre Dame Study but did not indicate whether either of the products at issue were among the products tested. (Id. at *8).  Plaintiffs also relied on a Commissioned Test but did not make it clear whether all tested tubes tested positive "for similar levels of the identified PFAS - or if a single tube tested positive, while every other tested tube showed no signs of PFAS." (Id. at 8).  This had nothing to do with rejection of *organic fluorine* as a proxy.

In Onaka v. Shiseido Americas Corp., 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) and 2024 WL 1177976, at *1 (S.D.N.Y. Mar. 19, 2024), Plaintiffs could not establish that they, or a third party, tested the same product line they had purchased from thereby failing to demonstrate facts making it at least plausible that one of them purchased a Product that contained PFAS. (Id. at *7-12). This had nothing to do with rejecting *organic fluorine* as a proxy.

In Lowe v. Edgewell Pers. Care Co., 2024 U.S. Dist. LEXIS 7238, *19, (N.D. Cal. Jan. 12, 2024), the Court found Plaintiffs' allegations that tampons contained PFAS to be insufficient because the "complaints are silent as to the amount of organic fluorine detected and whether that amount is negligible or significant". (Id.).

In addition, contrary to Defendant's argument, Lowe specifically distinguished the situation in Lowe with that of Kanan v. Thinx Inc., 2021 U.S. Dist. LEXIS 191225, at *12 (C.D. Cal. June 23, 2021) and Hamman, 2023 U.S. Dist.

LEXIS 85634 *11-13, which specifically held that Plaintiffs sufficiently pled economic injury *by* asserting *""heightened levels of organic fluorine," an indicator of PFAS."* See <u>Lowe</u>, 2024 U.S. Dist. LEXIS 7238 at*19. (emphasis added).  In sum, not one case cited by Defendant rejected utilizing the presence of *organic fluorine* as a proxy for PFAS (and all were granted leave to amend).

Third, Defendant's argument that *organic fluorine* may not be used as a proxy for PFAS is in direct conflict with the California Health & Safety Code which specifically provides the presence of PFAS in a product is determined and measured by *organic fluorine*. (FAC¶24).

Defendant's second argument is "there is nothing to indicate that the ppm levels of organic fluorine in the tested products are coextensive with the presence of any particular PFAS, and certainly not an unspecified harmful PFAS."  (See Dkt.13, Memo.at13:6-8). This argument should be rejected for three (3) reasons.

First, it misstates the issue that is alleged.  As noted, this matter alleges health risks associated with *organic fluorine*, not specific PFAS (FAC¶4).

Second, this argument does not acknowledge what is pled in the FAC. The FAC alleges the presence of harmful levels of *organic fluorine*.  The FAC alleges that under the California Health & Safety Code the presence of PFAS is determined and measured by *organic fluorine*. (FAC¶23).  The FAC further alleges "[t]he test results indicated dangerous levels of *organic fluorine*" and provided examples of maximum levels proscribed for other products (FAC¶34).  The FAC further alleges "because PFAS chemicals are "forever chemicals" and accumulate in the human body, there is no safe manner or level of exposure to humans (FAC¶34).  Finally, the FAC alleges "[t]he Nuby products are particularly concerning given the fact that an infant or toddler is being exposed to both the spout and lining and using repeatedly several times a day orally nursing for hours upon use." (FAC¶34).

Third, Defendant not only ignores what is alleged and misstates the issue, but Defendant's arguments relate to the merits of Plaintiff's claims and not their standing

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

to bring those claims and are therefore inappropriate at the motion to dismiss stage. See Zeiger, 304 F. Supp. 3d at 846 ("Defendant argues that plaintiffs cannot show any cognizable injury, because they cannot establish that defendant's Products contain unsafe amounts of arsenic, lead, or BPA. Defendant's arguments largely go to the merits of plaintiff's claims, and not their standing to bring those claims.").

Defendant's third and last argument here is that "there is nothing to indicate that the product purchased by Plaintiff even had organic fluorine".  (See Dkt.13, Memo.at13:8-9).  This is incorrect and should be rejected for two (2) reasons.

First, the FAC alleges Plaintiff commissioned testing of the Products, including the same Products as those purchased by Plaintiff.  (FAC¶¶26,27,28,29,30).  The FAC further alleges "[t]he products purchased by Plaintiff have the same composition of materials as the Products that were, and are, currently being manufactured and sold by Defendant during the proposed Class Period and the Products that were tested by Plaintiff. (FAC¶7,26).  Thus, the Court can reasonably infer the Product Plaintiff purchased had *organic fluorine* in it just as all of the Products tested by Plaintiff did. (FAC¶¶30,31,32,33).

Second, Defendant's challenge to these allegations again go to the merits of plaintiff's claims and not their standing to bring those claims and are inappropriate at the motion to dismiss stage. See Kanan, 2021 U.S. Dist. LEXIS 191225, *17 ("Thinx's argument about the accuracy of the alleged testing and the causation versus correlation issue are inappropriate at the motion to dismiss stage).

## 2.  Plaintiff Has Not Failed To Plausibly Connect Her Purchase To The Testing.

Defendant's second argument that the FAC should be dismissed for lack of Article III standing is that "even if the Court infers that organic fluorine is an indicator of harmful PFAS, Plaintiff fails to plausibly connect her purchase to the indirect testing conducted two years later." (See Dkt.13, Memo.at13:21-23).  In support of this argument, Defendant relies on one case out of the Southern District of New York,

Onaka v. Shiseido Americas Corp., 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) and 2024 WL 1177976, at *1 (S.D.N.Y. Mar. 19, 2024). Defendant is incorrect.

First, there is no reason this Court should adopt the holding of an out of district decision where, as set forth below, there are on-point Ninth Circuit decisions, Ninth Circuit precedent is controlling. United States v. Martinez, 967 F.2d 1343, 1347 (9th Cir. 1992) ("[W]e are obliged to follow the law of our circuit over inconsistent law from other circuits.").  In the Ninth Circuit, arguments that a Plaintiff must have linked the independent testing to the products they purchased have been rejected. See Rice-Sherman v. Big Heart Pet Brands, Inc., 2020 U.S. Dist. LEXIS 46197, *18-20 (N.D. Cal. Mar. 16, 2020) (quoting Lujan v. Defs' of Wildlife, 504 U.S. 555, 561 (1992)); Grausz v. Hershey Co., 2023 U.S. Dist. LEXIS 172300, *10-12 (S.D. Cal. September 9, 2023)("Hershey does not cite any Ninth Circuit decision which states Plaintiff "must, as a matter of law, proffer a formulaic recitation that the specific unit of Product she purchased contains [heavy metals][,]" and the Court finds none"). In addition, where a Plaintiff alleges that all of the products had the alleged contaminant or ingredient, there is not an issue with linking a product or establishing "reasonably near in time to the testing" as they all have the issue.  See Rice-Sherman v. Big Heart Pet Brands, Inc., 2020 U.S. Dist. LEXIS 46197, *18-20. [1]

That is what the FAC alleges here. The FAC alleges that all of the Products in the Product Line over the class period, including Plaintiff's, contain *organic fluorine*. (FAC¶30,31,32,33).  Any questions challenging those allegations are improperly to the merits.  See Rice-Sherman, 2020 U.S. Dist. LEXIS 46197, *21 ("In assessing standing on a motion to dismiss, the court must 'presume that general allegations,' like the ones alleged here, 'embrace those specific facts that are necessary to support the claim.").

---

[1] The Court explained: "Plaintiffs in both cases failed to allege that "all or even most" of the accused products were falsely advertised and therefore were required to allege that the particular products they purchased were part of a subset of accused products that were falsely advertised." 2020 U.S. Dist. LEXIS 46197, *18-20.

Second, the Court's reasoning in <u>Onaka v. Shiseido Americas Corp</u>., 2023 WL 2663877 and 2024 WL 1177976 would not establish a lack of Article III standing.  In <u>Onaka,</u> the Court found Plaintiffs not testing any of their own purchases was not fatal if the independent testing conducted by Plaintiff was "reasonably near in time to Plaintiff's own purchases" or there was evidence that the complained of chemical in the product (PFAS) was "widespread"  (<u>Id</u>. at 2024 U.S. Dist. LEXIS 50613, *7).  The Court found these conditions were not met because plaintiffs had not stated when their third-party testing occurred which therefore made it a sheer possibility Plaintiff's product had it and noted only one study in the complaint had found PFAS in *some* of defendants' products, but that study, however, did not list which line of Products were tested (therefore leaving to speculation that they were from the same line as those purchased by Plaintiffs) and was far outside the time period of the products purchased by the Plaintiffs. (<u>Id</u>. at *9-10).  The Court thereafter granted both motions to dismiss *without prejudice and with leave to amend*.  (<u>Id</u>. at 12).

Those are not the facts here.  Here, the FAC alleges all the Products during the proposed class period were of the same manufacture and composition (FAC 7, 26), provides which Products were tested (FAC¶30,32), provides that the Products tested were from the same line as those purchased by Plaintiffs (FAC¶30,32,36,61, 68(a), 106(a)), provides when Plaintiff's third-party testing occurred ((FAC¶30,32), and alleges that the Products purchased by Plaintiff and the Products tested were all purchased in close time proximity and well within the proposed class period. Specifically, the Class period is four (4) years from the date of filing of the original complaint (January 4, 2024) to present. (FAC¶30,32,61,65)(Dkt 1, Exhibit A). Plaintiff purchased in January 2022 (FAC 61).  The first Product tested was purchased in December 2022, *the same year* (FAC 30). The second group of Products tested were purchased February 27, 2024 (FAC¶32). Given the allegations that all of the eleven (11) Products at issue being manufactured and sold by Defendant during the proposed Class Period, including those purchased by Plaintiff, have the same

composition of materials as the Products that were tested, the Court can reasonably infer the Product Plaintiff purchased had *organic fluorine* in it just as all of the Products tested by Plaintiff did (FAC¶30,31,32,33).  The fact the tested Products were purchased thirteen (13) months apart and all had *organic fluorine* is evidence that the presence of *organic fluorine* in the Product Line is widespread.  Thus, the FAC here would meet the test in <u>Onaka</u>.

### 3.  Plaintiff has Sufficiently Pled Economic Injury.

Defendant's third argument that the FAC should be dismissed for lack of Article III standing is that the FAC does not set forth sufficient facts to establish an injury based on a price premium theory.  (See Dkt.13, Memo.at15:14-15).  Here, relying primarily on <u>Naimi v. Starbucks Corp.</u>, 798 F. App'x 67 (9th Cir. 2019), Defendant contends Plaintiff must and did not allege how much she paid, how much she would have paid for it absent the alleged deception, or whether the defendant (as opposed to a third-party distributor) was responsible for the alleged overpayment, or any other details regarding the price premium. (See Dkt.13, Memo.at15:25-16:2). Defendant's argument is incorrect and should be rejected for two (2) reasons.

First, "there is no requirement … that [plaintiffs] separately plead how much [they] would have paid for the merchandise had [they] known its true market value. *Kwikset* explicitly rejected that argument." <u>Hinojos v. Kohl's Corp.</u>, 718 F.3d 1098, 1105 (9th Cir. 2013) <u>citing</u> <u>Kwikset Corp. v. Superior Court</u>, 51 Cal. 4th 310, 246 P.3d 877, at 894-895 (Cal. 2011)("Because the issue here is only the threshold matter of standing, not whether and how much to award in restitution, a specific measure of the amount of [the alleged] loss is not required.").  <u>See</u> <u>Cohen v. Ainsworth Pet Nutrition LLC</u>, 2020 U.S. Dist. LEXIS 246315, *7 (C.D. Cal October 26, 2020)("Defendants complain of Plaintiff's lack of specificity concerning the price premium she allegedly paid for Defendants' products. (Mot. 9.) Defendants cite no authorities requiring Plaintiff to allege further detail concerning the price premium in order to adequately plead Article III injury. (Mot. 9 (citing only <u>Naimi v. Starbucks</u>

Corp., 798 F. App'x 67, 70 (9th Cir. 2019) (discussing adequacy of price premium allegations to state an injury under a New York statutory claim)". [2]

Second, Defendant's argument does not account for the alternative theories to pleading economic injury for Article III purposes in addition to "price premium" which Plaintiff pled that. The Ninth Circuit has consistently recognized a concrete economic injury lies where the plaintiff alleges that "they would not have purchased [a product] had there been proper disclosure" of relevant facts, that is sufficient to plead causation".  See Maya, 658 F.3d at 1069;  Pan v. Master Lock Co., LLC, 2023 U.S. Dist. LEXIS 82284, *7-8 (C.D. Cal. May 10, 2023)(If a person purchases or overpays for a product that they otherwise would not have, the person has suffered an economic injury that satisfies the Article III standing requirement); Schneider v. Chipotle Mexican Grill, Inc., 328 F.R.D. 520, 529-30 (N.D. Cal. 2018)(A plaintiff can satisfy the Article III injury-in-fact requirement by showing that she either: (1) paid a price premium for a mislabeled product; *or (2) would not have purchased the product had he or she known about the misbranding*."); Zeiger, 304 F. Supp. 3d at 846 (plaintiffs alleged a cognizable injury for purposes of standing because their claims were "premised on their allegation that were it not for defendants' labeling, which omit the presence of lead, arsenic, and BPA in their [contaminated dog food products], plaintiffs would not have purchased and spent money on their Products.")

Here, Plaintiff alleges that "in reliance on Defendant's labeling, marketing claims and omissions …, **Plaintiff and consumers purchased products they would not have purchased.**" (FAC ¶47,63,82,96,114)  Thus, Plaintiff has pled a direct causal link between Defendant's alleged omission, misrepresentations and Plaintiffs' injuries, Plaintiff which establishes Article III standing to bring this case.

---

[2] Naimi, 798 F. App'x 67 was also distinguished by Sinatro v. Barilla Am., Inc., 635 F. Supp. 3d 858, 876 (N.D. Cal. October 17, 2022)("the court did not analyze the sufficiency of the allegation under either Ninth Circuit or California law.").

**B.    Plaintiff Properly Pleads Consumer Fraud Claims**

   **1.    Plaintiff's Fraud Based Claims Are Pled With The Specificity Required By Rule 9(b).**

Defendant's next argument is that Plaintiff's UCL, FAL and CLRA claims are not pled with the heightened particularity pleading standard required by Rule 9(b). (See Dkt.13, Memo.at17:3-4;18:8-9).[3]  With minimal citation to general authority and no analysis whatsoever, Defendant then contends "the FAC includes headings for the who, what, when, where, how, why and injury, the allegations themselves are not particularized and are wholly conclusory. (See Dkt.13, Memo.at18:9-11).  That is the entirety of Defendant's argument. This is entirely insufficient for the basis of a motion.

While Rule 9(b) provides heightened pleading requirements that apply to UCL and CLRA claims sounding in fraud and a plaintiff must allege the who, what, when, where, and how of the misconduct charged, the Rule 9(b) standard is "somewhat relaxed" when a claim rests on an allegation of fraudulent omission or concealment because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." Asghari v. Volkswagen Grp. of Am., Inc., 42 F.Supp.3d. 1306, 1325-26 (C.D. Cal. 2013).  One line of cases provides that "[t]o plead the circumstances of omission with specificity plaintiff 'must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.'" See Santillan v. Am. Honda Motor Co., Inc., 2023 U.S. Dist. LEXIS 180205, *3-4 (C.D. Cal. June 22, 2023), citing Eisen v. Porsche

---

[3] As a clarifying point, Defendant incorrectly asserts "Plaintiffs UCL, FAL and CLRA claims are premised on the alleged "omissions and non-disclosures" of the existence and health risks of "organic fluorine and PFAS in the products in the Product Line…" (See Dkt.13, Memo.at17:3-4).  However, Plaintiffs UCL, FAL and CLRA are also based on the false, misleading and deceptive marketing and advertising by Defendant. (FAC¶¶77,92,107.)

1   Cars N. Am., Inc., 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012). Others have

2   rejected this standard and applied the "who, what, when, where, and how". See Banh

3   v. Am. Honda Motor Co., 2019 U.S. Dist. LEXIS 230700, *1 (C.D. Cal. December

4   17, 2019)(finding pleading standard applied in Eisen has been widely rejected). Rule

5   9(b) demands only a level of detail sufficient to place a defendant on notice of the

6   basis for a plaintiff's claims so that a defendant can prepare an adequate answer from

7   the allegations. Kanan, 2021 U.S. Dist. LEXIS 191225, *12-14, 2021 WL

8   4464200,*12-14. Plaintiff has met these standards here.

9       First, Plaintiff pled the content of the omission, provided representative samples

10  of marketing and packaging that she relied on to make her purchases and that failed to

11  include the omitted information, where the omission could and should have been

12  revealed, and what content should be provided. (FAC¶14,16,34,35,36).

13      Second, Plaintiff pled in detail "the who, what, when, where, and how of the

14  misconduct charged." The FAC alleges the "when" and "where" - Plaintiff purchased

15  the Product from a Target retail store in Pasadena, California during the class period

16  in January 2022. FAC ¶61. See Bruton v. Gerber Prods. Co., 2014 U.S. Dist. LEXIS

17  5493,*47 (N.D. Cal. Oct. 2, 2013)("allegations that plaintiff purchased defendant's

18  products throughout the class period were "sufficient to place [defendant] on notice as

19  to the time period in which [plaintiff's] allegations arise"). The FAC alleges the

20  "what" - the representations and omissions that Plaintiff saw on the advertisements

21  and labeling and relied upon when purchasing the products, which was within the

22  proposed class period. (FAC¶¶10,38). The FAC pleads the "who" and the "how" –

23  Defendant's omissions and representations about the Products are false and

24  misleading by alleging the findings from the testing done on the Products and the

25  studies about *organic fluorine* and PFAS generally. (FAC¶¶13,15,16,17,18,19,22,23,

26  24,26,27,28,29,30,31,32,33). The FAC alleges that Defendant omitted the information

27  about PFAS to induce consumers to purchase the Products. (FAC¶48(b)). The FAC

28  also alleges that Plaintiff would have acted differently if she knew about the existence

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

of *organic fluorine* and PFAS in the Products. (FAC¶¶48(g),63,82,96,114).  Lastly, the FAC summarizes in detail the who, what, when, where, and how of the misconduct charged at FAC ¶48(a-g).

Similar allegations have been found sufficient to meet Rule 9(b) standards. <u>See</u> <u>Dawood v. Gamer Advantage LLC</u>, 2022 U.S. Dist. LEXIS 138774,*9-11 (E.D. Cal. August 4, 2022)("Plaintiff bought defendant's FogAway product in the summer of 2021. The complaint alleges the representations, or lack thereof, that plaintiff saw on the advertisements and labeling of FogAway. Further, the complaint sufficiently pleads why and how defendant's representations about FogAway are false by alleging the findings from the study done on FogAway and other studies about PFAS generally. The complaint alleges that defendant omitted or mispresented the information about PFAS so that consumers would purchase FogAway. The complaint also alleges that plaintiff relied on the representations, or lack thereof, and would have acted differently if he knew about the existence of PFAS in FogAway." (Id.*9-11). (internal citations omitted). <u>See</u> also <u>Hamman</u>, 2023 U.S. Dist. LEXIS 85634,*17.

**2.      Plaintiff's Omission Allegations are Actionable.**

Omission may be the basis of claims under California consumer protection laws based on two circumstances: 1) where an omission is contrary to a representation made by the defendant; or 2) or an omission of a fact the defendant was obliged to disclose." <u>Hodson v. Mars, Inc</u>. 891 F.3d 857, 861 (9th Cir. 2018). Both apply here.

**a.  The Alleged Omission Is Contrary To A Representation Made By Defendant**

The FAC alleges that the alleged omission - the existence of *organic fluorine* in the Products in the Product Line – "directly contradicts Defendant's representations that Products are high-quality, free of suspected harmful chemicals, kind to delicate gums and precious teeth and sustainable." (FAC¶42).

Defendant argues that Defendant "never claimed that its products were "free of suspected harmful materials" and further asserts "Plaintiff repeatedly misconstrues

this language throughout the FAC". [4]  (See Dkt.13, Memo.at 8-9;p.19:3-5).  This is incorrect.  The language at issue is set forth in screen shots of Defendant's website in the FAC and spelled out in bullet points in the FAC.  The specific is the following:

> Luv n' care® specifies to our manufacturers/suppliers that they are only allowed to use plastics, color pigments and inks that **do not contain** BPA, Phthalates, or other **suspected harmful chemicals in manufacturing Nuby products**. **(FAC 10 (iii)).** (emphasis added).

Defendant generally cites to Harris v. McDonald's Corp., 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) with no analysis and argues that the interpretation of the marketing language must be reasonable and Plaintiff does not offer any fact to explain what a reasonable customer would interpret the above language to mean.

As set forth herein, the allegations in the FAC are not the bare sort involved in Harris.  Here, consumers could reasonably be expected to understand the Products are "free of" or "do not contain" "suspected harmful chemicals" as Defendant's statement literally states that.  In addition, the FAC alleges the misrepresentation is not only misleading, it is false. (FAC¶¶47,48).  How consumers would interpret the representation and whether the alleged representation are misleading or false is a question of fact and not a question that the Court can resolve at this stage. See Dawood, 2022 U.S. Dist. LEXIS 138774 *4, citing Zeiger, 304 F. Supp. 3d at 852 ("Plaintiffs have provided an actionable theory why the Products are unsafe and why the labels are misleading; whether plaintiffs can prove their theory is a separate question that I cannot resolve at [the motion to dismiss] stage.").

### b.  Defendant Omitted Facts It Was Obliged To Disclose

The second basis for an actionable omission is by showing the omission was of a fact that Defendant was obliged to disclose.  Hodson, 891 F.3d at 861. A duty to disclose is actionable in one of five circumstances: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively

---

[4] Defendant does not challenge any of the other alleged marketing language.

conceals a material fact from the plaintiff; (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed; and 5) when the undisclosed information "cause[s] an unreasonable safety hazard".  (Id.).

Here, Defendant asserts that Plaintiff only asserts one possible circumstance, "exclusive knowledge" (See Dkt.13, Memo.at 9:16-20).  This is incorrect.  As set forth below, Plaintiff asserts three (3) of the five (5) circumstances establishing that a duty to disclose applies here.

### 1. Defendant Had Exclusive Knowledge Of Material Facts Not Known Or Reasonably Accessible To The Plaintiff

To establish exclusive knowledge, allegations "'that defendants were aware of or had reason to know of' the allegedly omitted information" is sufficient for pleading knowledge for UCL and CLRA claims. See Lewis v. Rodan & Fields, LLC, 2019 U.S. Dist. LEXIS 32470, *9-10 (N.D. Cal. 2019).   It is generally sufficient for defendant to have had "superior knowledge" and for the information to have not been reasonably discoverable by the plaintiffs. See Anderson v. Apple Inc., 500 F. Supp. 3d 993, 1014-1015 (N.D. Cal. 2020).

Here, Plaintiff alleged that she did not know the Products contained *organic fluorine* before purchasing them. (FAC¶¶42,63,82,96,114).  She alleged that nowhere was there any disclosure that would indicate the Products contained *organic fluorine*. (FAC¶¶38,39,41). Plaintiff alleged Plaintiff and consumers lack the expertise to ascertain the existence of the true materials, chemicals and/or ingredients in the Products in the Product Line, including but not limited to *organic fluorine*. (FAC¶¶43, 34). Plaintiff alleges that she only gained knowledge of the presence of *organic fluorine* after purchasing the Products and having the Products tested by an independent third-party laboratory.  (FAC¶¶30,32,42,63,82,96,114).  Finally, Plaintiff alleges that Defendant, as the manufacturer of the Products, had exclusive knowledge of the materials, ingredients and chemicals in the Products.  (FAC¶¶5,42-42).

Defendant argues that they did not have exclusive knowledge because, it claims, in January 2022 there was no statute in effect setting a threshold for PFAS. (See Dkt.13, Memo. at 21:21-23).  That is false. For instance, as a manufacturer and distributor of consumer goods in California, Defendant must be observant of Health and Safety Code Section 25249.5-25249.13 (Proposition 65).  Proposition 65 has been in effect for close to 40 years and prohibits certain PFAS and a wide range of chemicals from consumer products. See https://www.p65warnings.ca.gov/.  While Proposition 65 has a different enforcement mechanism than the UCL, FAL and CLRA, it serves as one example of why and how Defendant had, or should have had, knowledge of *organic fluorine* in the Products.  In addition, Defendant's affirmative representation that the Products are not produced with "suspected harmful chemicals" implies a knew or should have known knowledge. According to the authority above, Plaintiff's allegations are sufficient for pleading knowledge.

>    **2.    Defendant Makes Partial Representations That Are Misleading Because Some Other Material Fact Has Not Been Disclosed.**

Partial representations can lead to a duty to disclose when "Plaintiffs allege that Defendant made partial representations that were misleading due to other facts not disclosed, and identify specific representations and omissions." See Doe v. SuccessfulMatch.com, 70 F. Supp. 3d 1066, 1079-80 (N.D. Cal. Sept. 30, 2014). A contradiction between the statements and the alleged omissions is an actionable omission. (Id.).

The FAC clearly alleges Defendant's representations and images that the Products in the Nuby brand Product Line are "high-quality", free of  "suspected harmful chemicals", "kind to delicate gums and precious teeth" and "sustainable" contradict and are misleading in light of the omission of the presence of *organic fluorine* in the Products. (FAC¶¶10,38,39,42,48(b)).  These partial representations about characteristics of the Products are counter to the omitted information about the

presence of *organic fluorine* and therefore established the duty to disclose and an actionable omission. (Id., 70 F. Supp. 3d at 1079-80).[5]

### 3. The Undisclosed Information Implicates Safety Concerns That A Reasonable Consumer Would Find Material.

A duty to disclose and an actionable omission exists when the undisclosed information implicates safety concerns that a reasonable consumer would find material. Hodson, 891 F.3d at 861-62; Mui Ho v. Toyota Motor Corp., 931 F.Supp.2d 987; Daugherty v. American Honda Motor Company, Inc., 144 Cal.App.4th 824, 836 (2006).); Lewis, 2019 U.S. Dist. LEXIS 32470, *9-10.

Defendant contends, without any authority, that "Plaintiff does not allege that the Product Line creates an unreasonable safety hazard" and argues that "at best, Plaintiff alleges that the existence of *organic fluorine* "implicates health and safety concerns", which is far short of a present and unreasonable hazard." (See Dkt.13, Memo.at21:1-5). Defendant is incorrect.

Here, Plaintiff explicitly alleges serious health risks associated with the undisclosed presence of *organic fluorine* in the Products, including California legislative findings (FAC¶¶13,15,16,17,18,19,20,21,22,21,23-25,27,30-32) and that selling bottles and spouts for repeated daily use by babies and toddlers without any disclosure that the bottles and spouts contain *organic fluorine* implicates health and safety concerns that a reasonable consumer would find material (FAC ¶¶4,34,35,48,51,63,79,81,87,94,95,100,107,111,113). On point authority holds that these allegations establish an actionable omission. See Lewis, 2019 U.S. Dist. LEXIS 32470, *9-10 (plaintiffs "plausibly alleged an omission-based false advertising claim premised on defendant's failure to disclose the *potential* side effects associated with the product by virtue of it containing ICP")(emphasis added); See Dawood, 2022 U.S. Dist. LEXIS 138774 *2, 5 ("FogAway contains unsafe per-and polyfluoroalkyl substances ("PFAS") which 'have been shown to have a number of toxicological

---

[5] Defendant did not address this basis for an actionable omission therefore foreclosing the ability to do so in reply. Cross v. Dolphin Beach, LLC, 2017 U.S. Dist. LEXIS 100445, *29 (S.D. Cal. June 28, 2017).

1   effects'"; consumers could interpret FogAway to be safe because of defendant's

2   omissions regardless of whether defendant explicitly stated FogAway is safe).

3        Plaintiff has provided an actionable theory why the Products are unsafe and

4   why the marketing and labels are misleading; whether Plaintiffs can prove their theory

5   is a separate question that cannot be resolved at the motion to dismiss stage. (Id.).

6   Therefore, Plaintiff's omission-based claims are actionable.

7        **3.    Plaintiff Sufficiently Alleged Facts Showing Reliance.**

8        Defendant's next argument is that Plaintiff has failed to allege facts showing

9   reasonable reliance because "Plaintiff's conclusion that the Product Line was free of

10  PFAS is unreasonable."  (See Dkt.13, Memo.at22:8-9).  Defendant then argues this

11  is particularly true considering Plaintiffs allegations that consumer's do not

12  understand what *organic fluorine* and PFAS are. (See Dkt.13, Memo.at22:9-11).

13  Defendant's argument is again incorrect.

14       As discussed above, the marketing language at issues states, *verbatim*, Luv n'

15  care® products "**do not contain** BPA, Phthalates, **or other suspected harmful**

16  **chemicals in manufacturing Nuby products**." (FAC¶¶10(iii)).  Based on this

17  language, a reasonable consumer would expect, and the FAC alleged, that the

18  Products not only do not contain PFAS, but as it states, any other suspected harmful

19  chemicals, whether they know what those chemicals are or not.  As the complaint

20  alleges, Plaintiff and consumers relied on this representation, which is false. (FAC

21  ¶¶48(g),63,82,96,114).  To the extent Defendant challenges how consumers would

22  interpret these representations is a question of fact and not a question that the Court

23  can resolve at this stage.

24       **4.    Plaintiff Alleged Affirmative Misrepresentations.**

25       Defendant's next argument is that there are no affirmative misrepresentations

26  alleged.  Here, with citation to no authority or fact whatsoever, Defendant argues:

27  "[t]o the extent Plaintiff contends that the claim is premised on affirmative

28  misrepresentation rather than an omission, Plaintiff has failed to satisfy Rule 9(b).

1    (See Dkt.13, Memo.at22:18-21). Defendant then contends "there are no allegations

2    specifically setting forth an affirmative misrepresentation separate from the purported

3    omission discussed above." (Id.).  This is a complete misstatement of the claims and

4    an improper challenge to the affirmative misrepresentations and marketing allegations.

5        The FAC specifically sets forth and lists the affirmative misrepresentation

6    claims twenty-nine (29) times in the FAC - FAC¶¶4,10,12,14,42,46,47,48(a)(b)(e),

7    63,64,68(g)(h),87,88(b),92,93,94,100,100(b),106(g)(h),107,119,120(b).  They are set

8    forth, for example, as follows:

9        "Defendant made material misrepresentations of fact about the products in the

10       Product Line through its website representations and marketing statements

11       that the products in the Product Line and the products purchased by Plaintiff

12       were and are **high-quality, free of suspected harmful chemicals, kind to**

13       **delicate gums and precious teeth and sustainable**" (See FAC at 48(a)).

14       The allegations are also framed as common questions for class treatment and

15   for "[a]n order compelling Defendant to cease marketing, labeling, packaging, and

16   advertising the products in the Product Line as high-quality, free of suspected harmful

17   chemicals, kind to delicate gums and precious teeth and sustainable." (FAC¶¶68(g),

18   (h);106(g),(h),88(b),101(b),120(b)).  Finally, the "who, what, when, where, how,

19   why" of the affirmative misrepresentations have been pled in detail and summarized

20   (FAC¶¶48) and satisfy Rule 9(b).  That Defendant claims there are no such allegations

21   is improper and the fact Defendant fails to address Plaintiff's clear allegations should

22   again foreclose Defendant from doing so on reply.

23       **IV.    PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT**

24       Plaintiff may state a quasi-contract cause of action where Plaintiff alleges that

25   Defendant enticed her to purchase their Products based on allegedly misleading

26   information and that Defendant was "unjustly enriched" as a result. See Astiana v.

27   Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) ("This straightforward

28   statement is sufficient to state a quasi-contract cause of action); Kanan, 2021 U.S.

Dist. LEXIS 191225 at*26-27 ("Because Plaintiffs plausibly allege that consumers could have been (and were) enticed to purchase Thinx's product based on allegedly misleading information, and because plaintiffs may plead claims in the alternative, they sufficiently state a quasi-contract claim.")

Here, Plaintiff has alleged that Defendant enticed her into purchasing certain products via false and misleading representations and omissions, which resulted in Defendant being unjustly enriched ((FAC ¶¶48(g),63,82,96,114; 122).  Therefore, Plaintiff sufficiently states a quasi-contract/unjust enrichment claim.

## V.    <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court deny Defendant's motion, or alternatively, grant leave to amend.

Respectfully Submitted,

DATED:  April 25, 2024            STEVENS, L.C.

By: _____

Paul D. Stevens
Attorneys for Plaintiff and the Class

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,985 words, which complies with the word limit of L.R. 11-6.1.

DATED:  April 25, 2024            STEVENS, L.C.

By: _____

Paul D. Stevens
Attorneys for Plaintiff and the Class

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS