**FERNALD & ZAFFOS**
BRANDON C. FERNALD (SBN: 222429)
15910 Ventura Blvd., Suite 1702
Encino, CA 91436
Telephone:(323) 410-0300
Facsimile: (323) 410-0330
Email: brandon@fzlaw.com

*Attorneys for Defendant,*
*LUV N' CARE, LTD.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKE RICHARDS, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>LUV N' CARE, LTD. and DOES 1 through 10, inclusive,<br><br>   Defendants.<br>_____ | CASE NO.  2:24-cv-00956-FMO-ADS<br><br>**REPLY IN SUPPORT OF DEFENDANT LUV N' CARE, LTD.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[REQUEST FOR JUDICIAL NOTICE]**<br><br>Date: Thursday, May 16, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Fernando M. Olguin<br>Ctrm: 6D |

DOCUMENT PREPARED
ON RECYCLED PAPER

# MEMORANDUM OF POINTS & AUTHORITIES

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... II

TABLE OF AUTHORITIES ............................................................................ IV

I.   SUMMARY OF REPLY. ............................................................................ 1

II.  ARGUMENT ............................................................................................... 3

    A.  This Plaintiff Lacks Standing To Assert The Claims. .......................... 3

        1.  Plaintiff's claims lack facial plausibility because her allegations do not support a reasonable inference that the Product Line contains organic fluorine and PFAS. ..................................................................................... 3

        2.  Without having established the presence of PFAS in her purchased product, Plaintiff has failed to demonstrate an injury in fact. ......................................... 8

        3.  Plaintiff has failed to allege facts demonstrating an economic injury. ................................................................. 9

    B.  Plaintiff's Vague Allegations Are Insufficient To Meet The Heightened Pleading Standard of Rule 9(b). ....................... 10

        1.  The purported affirmative misrepresentations are based on misquoted and misconstrued language on the LNC website. .......................................................... 10

        2.  The purported omissions are similarly premised on the same misquoted and misconstrued language on the LNC website. .......................................................... 12

        3.  LNC was not under a duty to disclose the potential risks from the potential presence of organic fluorine and PFAS. ............................................................................ 15

            a)  Plaintiff failed to establish LNC's knowledge of the presence of organic fluorine. ............................ 15

            b)  There were no partial representations with omitted known facts. ............................................ 16

            c)  Plaintiff has not alleged facts showing that the potential presence of organic fluorine implicates safety concerns. ...................................................... 17

        4.  Given the actual content of the alleged representations, Plaintiff has failed to allege facts showing reasonable reliance. ......................................... 19

DOCUMENT PREPARED
ON RECYCLED PAPER

C.  Plaintiff's Claim for Unjust Enrichment Should Be
Dismissed. .................................................................................20

III. CONCLUSION .............................................................................20

DOCUMENT  PREPARED
ON  RECYCLED  PAPER

- iii -

# TABLE OF AUTHORITIES

## Cases

*Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133 (C.D. Cal. 2005)........................................................................................22

*Ashcroft v. Iqbal* 556 U.S. 662 (2009)...............................................4, 5

*Astiana v. Hain Celestial Grp., Inc.* 783 F.3d 753 (9th Cir. 2015).........................23

*Babaian v. Dunkin' Brands Grp., Inc.*, Case No. LACV 17-4890-VAP, 2018 WL 11445613 (C.D. Cal. June 12, 2018)..............................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................4

*Birdsong v. Apple, Inc*., 590 F.3d 955 (9ᵗʰ Cir. 2009)..............................11

*Bowen v. Energizer Holdings, Inc*., Case No. CV 21-4356-MWF, 2022 WL 18142508 (C.D. Cal. Aug. 29, 2022).....................................4, 7

*Cahen v. Toyota Motor Corp.,* 717 F. App'x 720 (9th Cir. 2017) ..........................11

*Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004)..........................................3

*Daugherty v. Am. Honda Motor Co*., 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006) ..............................................15, 20

*Dawood v. Gamer Advantage LLC*, Case No. 2:22-cv-00562 WBS, 2022 WL 3108846 (E.D. Cal. Aug. 4, 2022)..........................................15

*Donohue v. Apple, Inc*., 871 F.Supp.2d 913 (N.D. Cal. 2012) ..............................17

*Gutierrez v. Carmax Auto Superstores Cal*., 19 Cal.App.5th 1234 (2018)..............................................19

*Hamman v. Cava Group, Inc.*, Case No. 22-cv-593 MMA, 2023 WL 3450654 (S.D. Cal. Feb. 8, 2023)..........................................7

*Hodsdon v. Mars, Inc*., 891 F.3d 857 (9th Cir. 2018) ..............................14

*Horti v. Nestle HealthCare Nutrition, Inc.,* Case No. 21-cv-09812-PJH, 2022 WL 2441560 (N.D. Cal. July 5, 2022) ..................................11

*In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541 (9th Cir. 1994)..............................................13

*Janney v. Mills,* 944 F.Supp.2d 806 (N.D. Cal. 2013) ..............................13

*Kanan v. Thinx, Inc.*, Case No. CV 20-10341 JVS, 2021 WL 4464200 (C.D. Cal. June 23, 2021) ..............................7, 23

*Kane v. Chobani, Inc*., Case No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ..........................................21

DOCUMENT PREPARED
ON RECYCLED PAPER

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ......................................11

*Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342 (2012) .................................19

*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011).........................................21

*Lewis v. Rodan & Fields, LLC*, Case No. 18-CV-02248-PJH,
2019 WL 978768 (N.D. Cal. Feb. 28, 2019) ........................................18

*Lowe v. Edgewell Personal Care Co.* Case No. 23-cv-00834-
AMO, 2024 WL 150758 (C.D. Cal. Jan. 12. 2024) ........................................8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)....................................................9

*Mui Ho v. Toyota Motor Corp.*, 931 F.Supp.2d 987 (N.D. Cal.
2013)....................................................20

*Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038
(9th Cir. 2008)....................................................22

Onaka v. Shiseido Americas Corp., Case No. 21-CV-10665-
PAC, 2024 WL 1177976 (S.D.N.Y. Mar. 19, 2024) ........................................6

*Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665-PAC,
2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) ........................................6

*Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 WL
5813422 (N.D. Cal. Nov. 7, 2019) ........................................10

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ...........................4

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th
Cir. 1997)....................................................22

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ........................................10

*Vess v. Ciba-Geigy Corp.* USA, 317 F.3d 1097 (9th Cir. 2003) ...........................12

*Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)...........................17

*Zeiger v. WellPet LLC*, 304 F.Supp.3d 837 (N.D. Cal. 2018)...............................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOCUMENT PREPARED
ON RECYCLED PAPER

Defendant LUV N' CARE, LTD. ("LNC" or "Defendant") submits this reply in support of its Motion to Dismiss, pursuant to Fed. R. Civ. Proc. 9(b), 12(b)(1) and 12(b)(6), the First Amended Complaint ("FAC") filed by Plaintiff Brooke Richards, individually and on behalf of the putative class:

## I.    SUMMARY OF REPLY.

There is no denying that the ubiquitous presence of PFAS has become a hot-button issue and that there has been recent legislation adopted regulating the presence of certain PFAS in consumer products. Plaintiff would obviously prefer that her claims be evaluated in the context of the present awareness of PFAS.  Indeed, the vast majority of the information cited in the First Amended Complaint ("FAC") addressing PFAS generally were published well-after Plaintiff purchased the Nuby cup that is the subject of this litigation.

In reality, Plaintiff purchased a Nuby Grip N' Sip Soft Spout Trainer Cup (one of 10 product styles she attempts to place at issue in this lawsuit) from Target in January 2022, two years before this case was filed. She alleges that she does not understand what organic fluorine and PFAS are or their potential health risks. She also never tested the particular Trainer Cup she purchased for the presence of organic fluorine or PFAS.

Eleven months later in December 2022, Plaintiff had seemingly become aware enough of the PFAS issue to purchase another Trainer Cup from another Target to test for the presence of organic fluorine. According to Plaintiff, organic fluorine has recently emerged as an indicator of the total content of both known and unknown types of PFAS. That testing revealed a minimal level of organic fluorine, 18 PPM, far below the standard of 100 PPM for regulated PFAS in juvenile products.

Based on this single purchase and test, Plaintiff filed this class action contending that every sippy cup LNC manufactured in its 10 product styles, along with all related accessories, were contaminated with PFAS. Plaintiff also claimed

DOCUMENT PREPARED
ON RECYCLED PAPER

LNC deceptively marketed its products as "free of suspected harmful chemicals" but failed to disclose to consumers that that the various Nuby 'sippy cup' product lines contained organic fluorine and PFAS.  There is no allegation that organic fluorine, much less PFAS, was utilized in *any* marketing, in any respect.

After this case was removed to Federal Court, the parties conferred on the merits of the claims, including the adequacy of the testing on a single product that revealed results below the "regulated PFA" threshold of 100 ppm measured in total organic fluorine as stated in *Health & Safety* Code §108945.

In February 2024, Plaintiff commissioned testing of another sample of the Trainer Cup she purchased and three other products in the 10 product lines. Plaintiff included the results of this second round of testing in the FAC. Of the 11 test results that Plaintiff sets out in the FAC, just two of the tests resulted in organic fluorine levels that came close to exceeding 100ppm. Despite these less-than-conclusive results, Plaintiff baldly asserts that organic fluorine was present in *all 11 product categories* in the Product Line *and* all the products in the Product Line purchased and used by Plaintiff.  Thus, with respect to *7 of the 11 product categories*,  no testing is alleged to have been done and thus the allegation that these products too contained PFAS is pure speculation.

Plaintiff does not refer to any articles, studies or reports addressing the presence of organic fluorine and PFAS in the materials used to produce LNC's products, much less the products themselves. Instead, and unlike many plaintiffs asserting claims concerning the presence of organic fluorine and PFAS in other consumer products such as makeup, food containers, and tampons, Plaintiff relies exclusively on her own limited testing of four Nuby products from which she herself concludes (without any cited scientific basis or expertise), that organic fluorine exists in all of LNC's products in the Product Line.

The inference, that the presence of organic fluorine in a product tested a year and two years after Plaintiff's only identified purchase, simply does not plausibly establish harm.  Plaintiff has offered no laboratory analysis, studies, or reports that interpret the limited results as conclusive proof that organic fluorine and PFAS are present across the Product Line. Because the alleged presence of organic fluorine is pure conjecture, Plaintiff has failed to establish that she suffered an injury in fact, a necessary component of Article III standing.

Not only has Plaintiff failed to meet her burden of demonstrating standing, she has fallen far short of Rule 9(b)'s heightened pleading requirement required for consumer fraud claims. She has resorted to a blatant misconstruction of LNC's website, claiming that LNC falsely represented the products as high-quality, free of suspected harmful chemicals, kind to delicate gums and precious teeth and sustainable. The cherry-picked phrases do not refer to the products at all and are twisted to support the false narrative that LNC had a duty to disclose the purported presence of organic fluorine but omitted that that fact on its packaging.

Given the overbroad conclusions that fail to demonstrate an injury in fact, and the utter lack of actionable misrepresentations or omissions, LNC's motion to dismiss should be granted.

## II.   ARGUMENT.

### A.   This Plaintiff Lacks Standing To Assert The Claims.

#### 1.   Plaintiff's claims lack facial plausibility because her allegations do not support a reasonable inference that the Product Line contains organic fluorine and PFAS.

LNC contends that Plaintiff lacks facial plausibility given the limited testing and the extrapolation of those testing results across the Product Line. If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Rule 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). In a facial attack, such as LNC's

DOCUMENT PREPARED
ON RECYCLED PAPER

challenge here, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal* 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

Plaintiff argues in opposition that the FAC alleges that all of the Products in the Product Line over the class period contain organic fluorine, and LNC's challenge to that allegation improperly goes to the merits of the claim. That is simply not the case. "Plaintiff's position would grant her standing to sue any manufacturer because there was some chance of a defect in the product she purchased, regardless of whether or not she actually purchased a product in the affected batch." *Bowen v. Energizer Holdings, Inc.*, Case No. CV 21-4356-MWF, 2022 WL 18142508, at *4 (C.D. Cal. Aug. 29, 2022) (granting the motion to dismiss where Plaintiff's claim is based on the hypothetical possibility that the products she purchased *may* have contained benzene – not that she purchased a product that demonstrably did contain benzene).

"A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 664. Plaintiff's allegations concerning the presence of organic fluorine and PFAS across the Product Line are a prime example of the sort of conclusory allegations that are not entitled to be presumed true at this stage. Plaintiff concludes, based on testing of four products, that the *entire* Product Line, all products sold over the 4-year class period, *and* the product she purchased, contain organic fluorine and PFAS.

Plaintiff purchased a Nuby Grip N' Sip Soft Spout Trainer Cup from a Target retail store in Pasadena, California in January 2022. (FAC ¶ 30.) Almost a year later, in December 2022, Plaintiff made a random sample purchase from a Target in Eagle Rock, California.  Later, on January 12, 2023, that product was tested for the presence of organic fluorine (18 PPM[1]). (*Id.*)

After this litigation was filed, Plaintiff commissioned a second round of testing on product samples purchased at a Walmart location in Los Angeles, California. (FAC ¶ 32.) Those samples were tested on February 27 and 28, 2024. (*Id.*) There are no allegations whatsoever that the independent testing laboratory concluded that organic fluorine and PFAS were present across the Product Line. That conclusion was drawn, improperly, by Plaintiff alone.

The conclusory nature of Plaintiff's allegations are readily apparent. From eleven (11) tests results on four (4) different product categories in the Product Line (meaning there were tests on just four or five product samples of the thousands sold, and only on 4 of the 11 product categories placed at issue in the FAC), Plaintiff surmises "[t]herefore, the products Plaintiff purchased from the Product Line contained organic fluorine." (FAC ¶ 61.)[2] This is quite a leap in logic considering Plaintiff acknowledges that products from the Product Line were sold to thousands of customers throughout California and the rest of the United States. (FAC ¶ 11.) So much of a leap that the presence of organic fluorine and PFAS across the Product Line cannot be reasonable inferred.

---

[1] Of note, this was the only test that Plaintiff conducted before filing this action, and the testing results revealed the presence of organic fluorine below the 100 PPM threshold for "regulated PFAS" set forth in *Health & Saf. Code*, § 108945.

[2] In the moving papers, LNC argued that Plaintiff failed to plausibly allege the existence of any PFAS in the Product Line. Even assuming, *arguendo,* that LNC had a duty to disclose the presence of both organic fluorine and PFAS, the FAC still fails to plausibly establish the existence of organic fluorine in Plaintiff's product or the Product Line as a whole.

DOCUMENT PREPARED
ON RECYCLED PAPER

Moreover, Plaintiff did not test any specific product she purchased. And Plaintiff did not identify any contemporaneous studies concerning the existence of organic fluorine or PFAS in the Product Line. Plaintiff did not even test *seven* of the products in the defined Product Line. With no testing at all on more than half of the product categories placed in issue, how can the Court be expected to reasonably infer the presence of organic fluorine or PFAS? It cannot.

Plaintiffs go to great lengths to distinguish *Onaka v. Shiseido Americas Corp*., No. 21-CV-10665-PAC, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) and 2024 WL 1177976, at *1 (S.D.N.Y. Mar. 19, 2024) which addressed the adequacy of allegations based on independent testing. True, the holding of *Onaka* is not binding on this Court. However, it is instructive given the parallels.

Furthermore, the analysis in *Onaka* is in accord with Ninth Circuit cases addressing similar testing allegations when a plaintiff fails to test any of their own purchases. *See Bowen v. Energizer Holdings, Inc*., *supra*, 2022 WL 18142508, at *4, (concluding that the plaintiff did not demonstrate standing because she did not allege facts from which test results "can be extrapolated across all of Defendants' products or to a specific batch which could have ended up in her purchased sunscreen."); *Bodle v. Johnson & Johnson Consumer Inc*., 2022 WL 18495043, at *2 (N.D. Cal. 2022) (without allegations that plaintiff purchased product from same lot that was tested, court was "unable to draw an inference on the facts as alleged that [plaintiff] purchased and used a [contaminated] product").

Plaintiff's case citations only serve to highlight the problems with the FAC and the lack of Article III Standing.

Plaintiff cites two cases *Kanan v. Thinx, Inc.*, Case No. CV 20-10341 JVS, 2021 WL 4464200 (C.D. Cal. June 23, 2021) and *Hamman v. Cava Group, Inc.*, Case No. 22-cv-593 MMA, 2023 WL 3450654 (S.D. Cal. Feb. 8, 2023) for the proposition

1   that Article III standing in these PFAS cases is established by the slimmest of
2   allegations regarding the presence of organic flourine.  Not so.

3   These cases are eminently distinguishable, and as the Court similarly noted in
4   *Lowe v. Edgewell Personal Care Co.* Case No. 23-cv-00834-AMO, 2024 WL 150758
5   (C.D. Cal. Jan. 12. 2024), serve to highlight the deficiencies in the current pleading
6   in this case.

7   A cursory review of the second amended complaint in *Hamman v. Cava Grp.,*
8   *Inc.* makes it abundantly clear why the court in that case concluded that the presence
9   of harmful PFAS and defendant's misrepresentations regarding the same, were
10   plausibly set forth.  As detailed in the second amended complaint in *Hamman*, Cava's
11   meal packaging was the specific subject of a study by 'Mind the Store and Toxic-
12   Free Future'.  In an effort to blunt publication of the study's results, Cava issued a
13   press release stating that its packaging was "now PFAS free", which, as the plaintiff
14   pointed out in her lawsuit, was effectively an acknowledgment by Cava of the prior
15   presence of PFAS in its packaging.  (Request for Judicial Notice ["RJN"], Ex. A,
16   ¶¶41-52.)

17   Problematically for Cava, two years later Consumer Reports rolled out its own
18   study entitled "Dangerous PFAS Chemicals Are In Your Food Packaging", which
19   once again concluded that in spite of Cava's representations to the contrary, its food
20   packaging continued to contain PFAS.  (RFN, Ex. A, ¶¶52-57.)

21   Similarly, in *Kanan v. Thinx*, *supra*, the product at issue was the specific
22   subject of a study and subsequent article in Sierra magazine with respect to the Thinx
23   product at issue in the lawsuit.  The study specifically concluded that the product
24   contained harmful levels of PFAS.  Following this publication, as in *Hamman*, Thinx
25   announced that its products had been thoroughly tested and were now free of "Long-
26   Chain PFAS chemicals".  Plaintiff alleged that her testing concluded that the product

27
28

continued to contain PFAS—specifically "Short Chain PFAS".  (RJN, Ex. B, ¶¶34-44, 70-84.)

Plaintiff's allegations in this case do not come close. Plaintiff allegedly purchased a sippy cup from one of 11 product categories and didn't test it.  Premised on that purchase and testing a year later of a different specimen, that evidenced very low levels of organic flourine, Plaintiff concludes that not only did the product she purchased a year earlier contain harmful PFAS, *but that all 11 categories of sippy cup products LNC sold over a four-year period all contained harmful levels of PFAs*. Unlike the cases she cites in her opposition, there is no study finding harmful PFAS in any of the Defendant's products, much less a public proclamation that Defendant's products are PFAS free. Indeed, Defendant is not alleged to have made any public statement whatsoever in any of its marketing materials concerning the presence or absence of PFAS.  In spite of Plaintiff's best efforts to put the proverbial lipstick on this pig, this case is *not remotely* analogous to the cases she cites that found Article III standing had been established.

Plaintiff's allegations do not remotely enter the realm of plausibility, and as a result fail to establish Article III standing.

**2.      Without having established the presence of PFAS in her purchased product, Plaintiff has failed to demonstrate an injury in fact.**

A party invoking federal jurisdiction has the burden to establish her standing to sue, that is, to establish that she: (1) has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992)*; Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1545 (2016).

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff must have alleged facts which demonstrate an injury in fact that is both concrete and particularized *and* actual and imminent, not merely conjectural or hypothetical. She must demonstrate an injury that is concrete and particularized as to herself. To get there, the Court must infer that the product Plaintiff purchased two years ago also contained organic fluorine and PFAS *and* then infer that those substances were introduced by LNC.

Plaintiff does not allege any facts that her injury is traceable to LNC. Plaintiff *does not* allege that LNC intentionally added PFAS to the Product Line. Plaintiff even includes a screenshot of LNC's website that states: "Luv n' care® specifies to our manufacturers/suppliers that they are only allowed to use plastics, color pigments and inks that do not contain BPA, Phthalates, or other suspected harmful chemicals in manufacturing Nuby products."

Plaintiff has failed to plead a particularized injury, that is, facts demonstrating that the Product she purchased contained organic fluorine and PFAS. The allegations fall far short of demonstrating a concrete, actual injury that is traceable to the challenged action of LNC.

### 3.    Plaintiff has failed to allege facts demonstrating an economic injury.

Plaintiff's alleged injury must be supported by more than conclusory statements unsupported by specific facts. *Pels v. Keurig Dr. Pepper, Inc*., No. 19-CV-03052-SI, 2019 WL 5813422, at *4 (N.D. Cal. Nov. 7, 2019) (dismissing the complaint for lack of standing for failure to plead a particularized injury). In addition, an economic injury cannot be premised on a hypothetical risk of harm. *Birdsong v. Apple, Inc*., 590 F.3d 955, 961 (9th Cir. 2009).

Oddly, Plaintiff asserts that LNC did not cite any cases requiring further detail to establish the price premium. In the moving papers, LNC cited several cases where the allegations fell short of establishing an economic injury. *Cahen v. Toyota Motor Corp.,* 717 F. App'x 720, 723-24 (9th Cir. 2017), *Babaian v. Dunkin' Brands Grp.,*

- 9 -

1  *Inc.,* Case No. LACV 17-4890-VAP, 2018 WL 11445613, at *7 (C.D. Cal. June 12,

2  2018), and *Horti v. Nestle HealthCare Nutrition, Inc.,* Case No. 21-cv-09812-PJH,

3  2022 WL 2441560, at *8 (N.D. Cal. July 5, 2022) which all found that the plaintiffs

4  failed to allege an economic injury sufficient to establish standing.

5      The fact that Plaintiff makes a wholly conclusory allegation that she paid more

6  for a product than she would have had she known of the so-called "potential health

7  risk" is not enough.

8      **B.    Plaintiff's Vague Allegations Are Insufficient To Meet The Heightened Pleading Standard of Rule 9(b).**

9

10     There is no question that Plaintiff's UCL, CLRA and FAL claims are subject

to the heightened pleading requirements of Rule 9(b). See *Kearns v. Ford Motor Co*.,

11 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp*. USA, 317 F.3d 1097,

12 1102-05 (9th Cir. 2003)  (holding that the Rule 9(b) pleading standards apply to

13 California CLRA, FAL, and UCL claims because, though fraud is not an essential

14 element of those statutes, a plaintiff alleges a fraudulent course of conduct as the

15 basis of those claims). Plaintiff does not contend otherwise.

16     If the Court concludes that Plaintiff has alleged sufficient facts to establish

17 Article III standing, it still must determine whether Plaintiff's allegations meet the

18 heightened pleading requirements of Rule 9(b). They do not.

19

20     **1.    The purported affirmative misrepresentations are based on misquoted and misconstrued language on the LNC website.**

21     Plaintiff asserts, in a footnote on page 13, that her claims are *also* based on the

22 false, misleading and deceptive marketing and advertising by Defendant. She cites to

23 paragraphs 77, 92, and 107 of the FAC.

24     Paragraphs 77 and 92 are part of the UCL and FAL claims and contain the

25 conclusory statement that "…the false, misleading and deceptive marketing and

26 advertising by Defendant promoting the products in the Product Line as high-quality,

27 free of suspected harmful chemicals, kind to delicate gums and precious teeth and

28

1   sustainable detailed herein constitute unfair, unlawful, and fraudulent business
2   practices…" Paragraph 107 is part of the CLRA claim and asserts that Defendant
3   "publicly disseminated marketing and advertising promoting the products in the
4   Product Line as high-quality, free of suspected harmful chemicals, kind to delicate
5   gums and precious teeth and sustainable when in fact they are not."

6        Plaintiff repeats, countless times, the generic phrases contained on the LNC
7   website, that the products are high-quality, free of suspected harmful chemicals, kind
8   to delicate gums and precious teeth and sustainable. Plaintiff contends that these
9   representations are false given the existence of, and potential health risks from,
10  organic fluorine in the products in the Product Line. (FAC ¶ 6.)

11       Plaintiff must set forth more than the neutral facts necessary to identify the
12  transaction. "The plaintiff must set forth what is false or misleading about a
13  statement, and why it is false. In other words, the plaintiff must set forth an
14  explanation as to why the statement or omission complained of was false or
15  misleading." *In re Glenfed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir.
16  1994); *see also Janney v. Mills,* 944 F.Supp.2d 806, 818 (N.D. Cal. 2013).

17       The FAC does not allege how any of the statements "high-quality", "kind to
18  delicate gums and precious teeth" or "sustainable" conveys false information about
19  the Product Line. The website states:

20       &bull;  "Nuby is dedicated to making **high-quality**, innovative products for
21          babies and toddlers." (FAC ¶10(i).)

22       &bull;  "We're on a journey to make our world as **sustainable** as possible for
23          tomorrow's children." (FAC ¶10 (ii).)

24       &bull;  "Our sippy cups with soft spouts or flexi-straws are **kind to delicate**
25          **gums and precious teeth** and ensure your little one is pleasantly
26          distracted from the discomfort of teething." (FAC ¶10(iv).)

27

28

Why are any of these statements false? None of these statements refer specifically to the Product Line and the FAC does not allege how any of these statements convey false information about the Product Line.

As for the main assertion, the so-called representation that the Product Line is free of suspected harmful chemicals, the specific statement on the LNC website is *misquoted* throughout the FAC and again in Plaintiff's opposition. LNC's website provides: "Luv n' Care® specifies to our manufacturers/suppliers that they are only allowed to use plastics, color pigments and inks that do not contain BPA, Phthalates, or other suspected harmful chemicals in manufacturing Nuby branded products. In addition, our products meet all governmental regulations including FDA, CPSC, CPSIA and European standards/regulations." (FAC ¶ 10(iii).)

Plaintiff *ignores* the first portion of that statement, that LNC specifies to its manufacturers to only use plastics, color pigments and inks that do not contain suspected harmful chemicals. The statements do not state, despite Plaintiff's effort to bold and underline the portions that best suit her narrative, that the Product Line is free of suspected harmful chemicals. Obviously, Plaintiff has misconstrued the plain language on the LNC website to create a representation that simply does not exist.

To the extent Plaintiff contends that the claim is premised on affirmative misrepresentation, Plaintiff has failed to satisfy Rule 9(b).

## 2. The purported omissions are similarly premised on the same misquoted and misconstrued language on the LNC website.

Plaintiff's UCL, CLRA and FAL claims are also premised on the omission and non-disclosure of information that is a material concern for consumers—the existence of, and potential health risks from, organic fluorine in children's sippy cups..." (FAC ¶ 4.) It is, according to Plaintiff, the existence of organic fluorine in the Products in the Product Line that directly contradicts the purported representations that the Products are "high-quality, free of suspected harmful chemicals, kind to delicate gums and precious teeth and sustainable".

DOCUMENT PREPARED
ON RECYCLED PAPER

Again, there is no dispute that the standards of Rule 9(b) apply to the omission claims. While Plaintiff asserts that the Rule 9(b) standard is "somewhat relaxed", it nonetheless applies. In addition to the Rule 9(b) standard, for a claim premised on an alleged omission to be actionable, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc*., 891 F.3d 857, 861 (9th Cir. 2018) citing *Daugherty v. Am. Honda Motor Co*., 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118, 126 (2006).

To that first point, the omission must actually be contrary to a representation made. Plaintiff argues that the website literally states that its Products are "free of" or "do not contain" "suspected harmful chemicals". (Opp. p. 16:12-14.) Of the representations noted above (all of which Plaintiff contends are actually false), three of them do not refer to any product at all. Even assuming the presence of some unidentified PFAS in the product Plaintiff purchased (which has clearly not been established), that is not contrary to LNC's claims that it is dedicated to making high-quality, innovative products for babies and toddlers or "on a journey to make our world as sustainable as possible for tomorrow's children."

In a desperate attempt to save the lacking element of the claims, Plaintiff *continues to* misconstrue the language on LNC's website, asserting that the website states that the products "do not contain BPA, Phthalates, or other suspected harmful chemicals in manufacturing Nuby products." (Opp. at p. 20:13-16.) *The website says no such thing*. LNC's website provides: "Luv n' Care® **specifies to our manufacturers/suppliers** that they are only allowed to use plastics, color pigments and inks that do not contain BPA, Phthalates, or other suspected harmful chemicals in manufacturing Nuby branded products." (FAC ¶ 10 on p. 6.) Plaintiff cannot simply read-in language to manufacture a representation to conjure an actionable omission.

Plaintiff cites *Dawood v. Gamer Advantage LLC*, Case No. 2:22-cv-00562 WBS, 2022 WL 3108846 (E.D. Cal. Aug. 4, 2022) and *Zeiger v. WellPet LLC*, 304 F.Supp.3d 837 (N.D. Cal. 2018) contending that how a reasonable consumer would interpret the representations on the website is a question of fact that cannot be resolved at this stage. In *Dawood*, the advertisements and labeling stated that FogAway was: (1) "Safe to apply on all lenses, devices, & screens;" (2) "Safe for use on all lenses and devices;" and (3) "Safe and effective on all lens types even those with anti-reflective or super hydrophobic coating." *Dawood*, at p. 3. The Court concluded that a reasonable consumer could interpret defendant's express representations that a product was safe to mean that it was free of PFAS. In *Zeiger*, the representations were similarly based on the product at issue, with the defendant marketing CORE Ocean dog food as "natural, safe, and pure," and representing it took "extra precautions to make sure ingredients are stored properly, temperatures are monitored and products are routinely tested". *Zeiger* at p. 851. The Court concluded, from the detailed representations, that a reasonable consumer would understand "natural, safe and pure" to mean that CORE Ocean did not contain the chemical BPA is plausible. The information on the website that Plaintiff includes in her FAC are plainly distinguishable from the types of claims made in *Dawood* and *Zeiger*.

It is not a matter of whether Plaintiff's interpretation of the statements on the website is reasonable and thus plausible. It is the fact, apparent from the screenshots included in the pleading itself, that the website *literally does not say* what Plaintiff claims it says.

Again, as detailed above, most of the cited representations do not refer to the Product Line at all. They are generalized statements that can't possibly be construed as making affirmative representations about any particular product. The purported

omission of the presence of organic fluorine and PFAS, even if presumed true, is not contrary to any of the specific representations Plaintiff includes in her FAC.

### 3.   LNC was not under a duty to disclose the potential risks from the potential presence of organic fluorine and PFAS.

LNC must have been under an obligation to disclose the hypothetical existence of organic fluorine for the omission-based claims to be actionable. *Hodsdon,* 891 F.3d at p. 861. Plaintiff asserts that she has established three of the five possible circumstances in which a duty to disclose might arise, specifically (1) the defendant had exclusive knowledge of material facts not known to the plaintiff, (2) the defendant makes partial representations but also suppresses some material facts, and (3) where the undisclosed information causes an unreasonable safety hazard. (Opp. at p. 17:5-8.) Each is addressed below.

### a)   Plaintiff failed to establish LNC's knowledge of the presence of organic fluorine.

"In order to give rise to a duty to disclose, a complaint must contain specific allegations demonstrating the manufacturer's knowledge of the alleged defect *at the time of sale.*" *Donohue v. Apple, Inc*., 871 F.Supp.2d 913, 927 (N.D. Cal. 2012); see also *Wilson v. Hewlett–Packard Co*., 668 F.3d 1136, 1145 (9th Cir. 2012) ("California federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss.").

Plaintiff first contends that LNC, as the manufacturer of the products, had exclusive knowledge of the materials, ingredients and chemicals in the Products. But she alleges that "[a]ll of the products in Defendant's Nuby Sippy Cup Soft Spout Product Line have the same composition of materials, all were manufactured in the same place and manner" (FAC ¶ 61.) Her own allegations belie her claim that LNC had exclusive knowledge of the products' composition and manufacturing process.

- 15 -

DOCUMENT PREPARED
ON RECYCLED PAPER

In addition, Plaintiff has not specifically alleged that LNC was aware of, or had reason to know of, the presence of organic fluorine in the Product Line. Nowhere in the FAC does Plaintiff allege that LNC knew of the existence of organic fluorine and PFAS in its Product Line. The closest she gets is alleging that LNC "knew, or should have known, **to test for** organic fluorine and PFAS." (FAC ¶48(b).) Why? Plaintiff does not allege any facts from which it could be inferred that LNC "should have known" in January 2022 to test for the presence of organic fluorine.

Plaintiff cites *Lewis v. Rodan & Fields, LLC*, Case No. 18-CV-02248-PJH, 2019 WL 978768 (N.D. Cal. Feb. 28, 2019), where the Court found that plaintiffs have adequately alleged "that defendants were aware of or had [ ] reason to know of" the allegedly omitted information concerning the serious side effects associated with ICP. *Id.* at p. 3. In *Lewis* however, the complaint included allegations concerning an FDA warning to another manufacturer of "cosmetic" lash-enhancement products that used ICP, that the products violated the Food, Drug, and Cosmetic Act because they were unapproved new and misbranded drugs. *Id.* at p. 1.

Here, Plaintiff offers no foundational facts from which it could be presumed that LNC knew, or had reason to know, of the need to test for the alleged presence of organic fluorine in its products. In opposition, she argues that LNC must have been observant of Proposition 65. (Opp. p. 18:1-12.) However, the FAC makes no mention of Proposition 65. Other than Plaintiffs bare conclusion, which is not presumed true, there are no facts alleged which demonstrate why LNC should have known its products potentially contained organic fluorine.

### b) There were no partial representations with omitted known facts.

A defendant has a duty to disclose when the fact is known to the defendant and the failure to disclose it is misleading in light of other facts that the defendant did disclose. See generally, *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal.App.5th 1234, 1258 (2018) (citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342, 1382

- 16 -

DOCUMENT PREPARED
ON RECYCLED PAPER

(2012). As noted above, Plaintiff has not established that LNC knew of the fact (the alleged presence of organic fluorine) that she contends should have been disclosed. It only makes sense that a duty to disclose *cannot* exist if the defendant *was not aware* of the facts that was allegedly not disclosed. For the same reasons noted above, Plaintiff has not established that LNC knew of the existence of organic fluorine in its products and knowingly omitted that information.

Moreover, for the same reasons discussed above, the representations on the website are not the sort of "partial representations" that might establish a duty to disclose. Plaintiff has not identified advertising, marketing, or other materials she saw that promised the Product Line was free of organic fluorine, a predicate to Plaintiff's specific concealment theory in this case. As detailed above, the screenshots of the representations on which Plaintiff premises her claims either do not refer to any particular product or represent that the products are "free of" organic fluorine.

### c) Plaintiff has not alleged facts showing that the potential presence of organic fluorine implicates safety concerns.

The FAC does not allege an unreasonable safety hazard or a defect that is central to any of the eleven Product's function. At best, Plaintiff alleges that the there are "potential health risks" from the existence of organic fluorine (FAC ¶ 4) that "implicates health and safety concerns" (FAC ¶51), which is far short of claiming any of the Products presents an unreasonable hazard. She also never identifies the particular PFAS that might be present or whether those PFAS would be one of the handful of PFAS that have been identified as potentially harmful.

The cases Plaintiff relies on are distinguishable. In *Mui Ho v. Toyota Motor Corp.,* 931 F.Supp.2d 987 (N.D. Cal. 2013), the plaintiffs claimed that vehicle headlamp assemblies were defective because they were prone to condensation and moisture retention and eventually became dangerously dim or failed completely, posing a safety hazard. *Id.* There, the defendant had exclusive knowledge of early

- 17 -

consumer complaints, testing and other internal investigations into the headlamps. *Id.* The Court found that "Plaintiffs successfully showed that the alleged defect posed a genuine safety risk because a headlamp flickering or going out at night or in inclement weather could put the car's driver in danger. A reasonable consumer would consider this risk material because of the inherent risks of physical injury in the event of a headlamp-related accident, or the costs associated with continually repairing problematic headlamps." *Id.* at p. 997. And, in *Lewis,* as noted above, the complaint included allegations that the FDA had given prior warnings on the possible adverse effects associated with the active ingredients in the product. *Lewis v. Rodan & Fields, LLC*, *supra*, 2019 WL 978768 at *1. Again, the distinguishing factor is that the defendant in *Lewis* was aware of the serious potential side effects.

Plaintiff also cites *Daugherty v. American Honda Motor Co., Inc*., *supra*, which sustained a demurrer to plaintiff's allegations where the complaint alleged "Honda's knowledge of 'unreasonable risk' to plaintiffs at the time of sale, but the 'unreasonable risk' alleged is merely the risk of 'serious potential damages' — namely, the cost of repairs in the event the defect ever causes an oil leak. *Id.* at p. 836. The complaint was found to be devoid of factual allegations showing any instance of physical injury or any safety concerns posed by the defect. *Id.* The same is true here.

Plaintiff has not alleged any imminent safety risk. She has not even alleged that exposure to organic fluorine is certain, or even likely, to cause a health risk. Allegations of an unspecified "potential" safety risk from a substance Plaintiff has not even established is harmful is not enough to create a duty to disclose. Based on the allegations in the FAC, and even assuming that organic fluorine is actually present in the Product Line (a point that LNC does not concede in any way), Plaintiff has not established that LNC was aware of or should have been aware of the presence of

organic fluorine or otherwise had an obligation to disclose the potential presence of organic fluorine as a potential safety hazard.

### 4. Given the actual content of the alleged representations, Plaintiff has failed to allege facts showing reasonable reliance.

Plaintiff has not made an adequate "showing of a causal connection or reliance on the alleged misrepresentation" as required by the UCL, FAL, and CLRA. See *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326 (2011) (holding, for purposes of UCL and FAL, "[a]s a result of" means "caused by" and requires a "showing of a causal connection or reliance on the alleged misrepresentation"); see also *Kane v. Chobani, Inc.*, Case No. 12-CV-02425-LHK, 2013 WL 5289253, at *5 (N.D. Cal. Sept. 19, 2013) (holding standing under CLRA requires plaintiff to "allege that [such plaintiff] relied on the defendant's alleged misrepresentation").

Plaintiff argues that she relied on the same oft-misquoted portion of LNC's website as a representation that the Products "do not contain" "suspected harmful chemicals." But for many of the same reasons outlined herein, Plaintiff has not established that LNC had exclusive knowledge of the alleged presence of organic fluorine or that LNC actively concealed the presence of organic fluorine. Without having established a misrepresentation or omission, there is no causal connection or reliance on the alleged misrepresentation or omission.

Plaintiff does not argue that she relied on the alleged representations that the products were high-quality, sustainable, or kind to teeth. Nor could she because these are mere puffery. "Generalized, vague, and unspecific assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable". *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1139 (C.D. Cal. 2005) (finding the terms such as "high-quality" and "reliability" to be non-actionable puffery). Furthermore, none of the screenshots included in the FAC contain representations of specific or absolute characteristics of a product. See generally, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). A

- 19 -

statement is considered puffery if the claim is extremely unlikely to induce consumer reliance." *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). "[T]he determination of whether an alleged misrepresentation is a statement of fact or is instead mere puffery is a legal question that may be resolved on a Rule 12(b)(6) motion." *Id*.

Under these circumstances, Plaintiff has not sufficiently alleged actual reliance on a material omission.

### C.   Plaintiff's Claim for Unjust Enrichment Should Be Dismissed.

Plaintiff argues that she is entitled to state a quasi-contract claim where she alleges that Defendant enticed her to purchase their Products based on allegedly misleading information, citing *Astiana v. Hain Celestial Grp., Inc*. 783 F.3d 753, 762 (9th Cir. 2015) and *Kanan v. Thinx Inc*., *supra*, 2021 WL 4464200 at *9. Such a claim is based on the theory "that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana,* 783 F.3d at p. 762 (internal quotation marks and citation omitted). She asserts that LNC enticed her into purchasing certain products via false and misleading representations and omissions which resulted in LNC being unjustly enriched.

Plaintiff's reliance on *Astiana* and *Kanan* is misplaced for the obvious reasons that (1) she has not plausibly alleged any "false" or "misleading" information and (2) she does not allege to have been "enticed" to purchase the Product. Accordingly, this Court should dismiss Plaintiff's unjust enrichment claim with prejudice.

### III.   CONCLUSION

Based on the arguments in the moving papers and herein, LNC respectfully requests that the Court enter an order in its favor and dismiss, for the failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6), all causes of action set forth in Plaintiff's FAC.

Dated: May 2, 2024                    **FERNALD & ZAFFOS**

                                      By:   _/s Brandon C. Fernald_
                                            Brandon C. Fernald

                                      Attorneys for Defendant,
                                      LUV N' CARE, LTD.


        The undersigned, counsel of record for Defendant LUV N' CARE, LTD,

certifies that this brief contains 6,495 words, which complies with the word limit of

L.R. 11-6.1.


Dated: May 2, 2024                    **FERNALD & ZAFFOS**

                                      By:   _/s Brandon C. Fernald_
                                            Brandon C. Fernald

                                      Attorneys for Defendant,
                                      LUV N' CARE, LTD.

DOCUMENT PREPARED
ON RECYCLED PAPER

## **CERTIFICATE OF SERVICE**

I, Brandon C. Fernald, declare that I am over the age of eighteen years and not a party to this action. I am employed in Los Angeles County, and my business address is: Fernald & Zaffos APC, 15910 Ventura Blvd., Suite 1702, Encino, California 91436.

On **May 2, 2024**, I hereby certify that a true and complete copy of the foregoing documents:

**REPLY IN SUPPORT OF DEFENDANT LUV N' CARE, LTD.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

have been served by forwarding said copy by electronic submission through my email the documents listed above to:

| | |
|---|---|
| Paul D. Stevens, Esq.<br>Lauren A. Bochurberg, Esq.<br>**STEVENS, LC**<br>1855 Industrial Street, Suite 518<br>Los Angeles, California 90021<br>Tel: (213) 270-1211<br>Fax: (213) 270-1223<br>Email: pstevens@stevenslc.com<br>       lbochurberg@stevenslc.com | *Attorneys for Plaintiff,*<br>*Brooke Richards* |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  May 2, 2024

                                 */s Brandon C. Fernald*
                                  Brandon C. Fernald

DOCUMENT PREPARED
ON RECYCLED PAPER