Paul D. Stevens (Cal. Bar. No. 207107)
pstevens@stevenslc.com
Lauren A. Bochurberg (Cal. Bar. No. 333629)
lbochurberg@stevenslc.com
**STEVENS, LC**
1855 Industrial Street, Suite 518
Los Angeles, California 90021
Tel: (213) 270-1211

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

BROOKE RICHARDS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LUV N' CARE, LTD. and DOES 1 through 10, inclusive,

Defendant.

Case No. 2:24-cv-00956-FMO-ADS

**SECOND AMENDED COMPLAINT CLASS ACTION**

1. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200, *et seq*.
2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq*.
3. VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq*. (Consumers Legal Remedies Act)

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff Brooke Richards (hereinafter "Plaintiff"), individually and on behalf of herself and others similarly situated (hereinafter "the Class" or "Class Members"), alleges the following:

## I. JURISDICTION

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more proposed Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2. This Court has personal jurisdiction over Defendant because Defendant has intentionally availed itself of the laws of the United States and the state of California, having purposefully marketed, advertised and/or sold the Product Line (defined below) to consumers across the United States, including the state of California. Such conduct has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including in the state of California.

## II. VENUE

3. In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

## III. NATURE OF THE ACTION AND STATEMENT OF FACTS

4. This is an important consumer protection matter that concerns two issues: i) the omission and non-disclosure of information that is a material concern for consumers—the existence of, and potential health risks from, organic fluorine

in children's sippy cups produced, marketed and sold by Luv N' Care, Ltd ("Defendant") under the brand name "Nuby" and specifically, the Nuby Sippy Cup Soft Spout Product Line as defined herein; and ii) false and misleading marketing of the Nuby Sippy Cup Soft Spout Product Line and the Nuby brand as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable given the existence of, and potential health risks from, organic fluorine in the products in the Product Line.

5. Defendant is a manufacturer, distributor, and marketer of a variety of baby and toddler products.

6. The products at issue are Defendant's Nuby Sippy Cup Soft Spout Product Line.

7. The products in Defendant's Nuby Sippy Cup Soft Spout Product Line that were manufactured, marketed, advertised and sold by Defendant over the proposed class period and are currently being manufactured, marketed, advertised and sold by Defendant, and the products in Defendant's Nuby Sippy Cup Soft Spout Product Line purchased by Plaintiff and tested by Plaintiff as set forth herein, were and are substantially similar. All of the products in Defendant's Nuby Sippy Cup Soft Spout Product Line have the same "Soft Spout", all have the same essential design with the minor variances in sizes, shapes and colors, and all are made from the same manufacturing process. Defendant's Nuby Sippy Cup Soft Spout Product Line includes the following products, as identified by their product names on the packaging of each the products, as follows:

i. Grip N Sip Soft Spout Trainer Cup
ii. Clik-it Soft Spout Cup
iii. Clik-it Soft Spout Cup with Carabiner
iv. Clik-it Soft Spout Trainer Cup
v. Easy Grip Soft Spout Sippy Cup
vi. Easy Grip Soft Silicone Spout Cup

vii. Grip N' Sip first sipeez

viii. Mini Grip N Sip Soft Spout Trainer Cup

ix. Mini Gripper Soft Spout Cup

x. Mini Gripper Soft Spout Cup with Silicone Band

xi. iMonster Soft Spout Trainer Cup

xii. Sili Bands Spout Cup

xiii. Replacement Spouts for each of the products.

(hereinafter individually referred to as "product", plurally referred to as "products" and collectively referred to as "the Product Line"):

8. Defendant offers the products in the Product Line for sale through various channels, including directly on Defendant's website and through third-party retail outlets and internet websites such as Target, Walmart, and Amazon.

9. As set forth below, through an extensive, widespread, comprehensive, and uniform nationwide marketing campaign, including creating marketing materials pertaining to the products in the Product Line for third-party sellers, Defendant promoted itself as a conscientious company that does not use suspected harmful chemicals to humans or the environment in its manufacturing process of the products in the Product Line.

**A. Defendant's False, Misleading and Deceptive Marketing of the Products in the Nuby Product Line.**

10. During the Class Period defined herein, which dates from January 4, 2020 to present, Defendant promoted, and continues to promote, the Nuby brand and the products in the Product Line through the following false, misleading and deceptive statements on the Nuby brand website pages (images of the website pages are set forth below; the statements and terminology that are false, misleading and or add to the deception are identified in bold):

i.




- **We're home to everything you need for a** happy and **healthy child.**

ii.




- "We're on a journey to make our world **as sustainable** as possible for tomorrow's children" https://us.nuby.com/pages/about-us

iii.




- **Luv n' care® specifies to our manufacturers/suppliers that they are only allowed to use plastics, color pigments and inks that do not contain** BPA, Phthalates, or other suspected **harmful chemicals in manufacturing Nuby products**.
- https://us.nuby.com/pages/faqs

iv.




- We are dedicated to developing innovative products for babies and toddlers so you can rest assured that **our sippy cups have been thoroughly tried and tested by experts.**
- Our sippy cups with soft spouts or flexi-straws are kind to delicate gums and precious teeth.
- https://us.nuby.com/collections/sippy-cups

v.




- **All of our cups are made from BPA-Free Plastic, which is a safe material** used in all types of bottles and cups.
- https://us.nuby.com/collections/sippy-cups

11. Through Defendant's marketing and advertising campaign, Defendant was able to sell products from the Product Line to thousands of consumers throughout California and the rest of the United States. The products in the Product Line are sold individually for prices ranging from $2.49 to $7.99 per product.

12. Plaintiff read, believed, and relied upon Defendant's marketing and advertising of the products and the Product line set forth in paragraph 10 (i-v) herein as "home to everything you need for a …healthy child", "sustainable", "made from BPA-Free Plastic, which is a safe material", "do not contain suspected harmful chemicals in manufacturing Nuby products", "have been thoroughly tried and tested by experts" and "are kind to delicate gums and precious teeth" (hereafter collectively referred to as "the Misrepresentations") when purchasing the products from the Product Line.

13. Plaintiff reasonably understood the net impression of the Misrepresentations to mean that the products in the Product line do not contain suspected harmful chemicals in manufacturing Nuby products and are sustainable.

14. Currently, there is significant public health concern about the materials and chemicals used in infants' and children's products. In particular, sippy cups, a popular option for children who are transitioning from a bottle to an open cup, may expose children to harmful chemicals.[1]

15. In addition, consumers today are increasingly conscious of brands' efforts to make a positive difference in the world.[2] Sustainable marketing is the promotion of environmentally and socially responsible products, practices, and brand values.[3] [4] Incorporating social responsibility into brands' public relations strategies can make a profound impact on consumer decisions.

16. Thus, there is a continuous incentive for a company such as Defendant's to market its brand and the products in the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable.

---

[1] https://www.webmd.com/parenting/what-to-know-about-sippy-cups; https://www.cbsnews.com/pittsburgh/news/pennsylvania-department-of-health-warning-childrens-cups-recalled-lead-levels/#:~:text=The%20recall%20impacts%20the%208,and%20Sip%20and%20Straw%20Cups.

[2] See https://www.linkedin.com/pulse/5-key-elements-successful-wellness-brand-pr-strategy-examples

[3] https://www.smartinsights.com/online-brand-strategy/brand-positioning/sustainable-marketing-how-should-you-use-it/

[4] https://abmatic.ai/blog/sustainable-marketing-strategies-building-brands-with-environmental-responsibility#:~:text=Sustainable%20marketing%20focuses%20on%20integrating,customers%20who%20value%20environmental%20stewardship.

**B. The Existence Of Harmful Chemicals In Products In The Product Line That Implicates Health And Safety Concerns That A Reasonable Consumer Would Find Material.**

17. The products in the Product Line at issue contain, among other things, PFAS as measured in total organic fluorine.

18. According to the U.S. Centers for Disease Control and Prevention (CDC), PFAS are a group of over 9,000 synthetic chemicals that have been used in industry and consumer products, worldwide, for over 70 years.[5]

19. The California legislature has found and declared the following: “PFAS,” are highly toxic and highly persistent in the environment. See Cal Health & Safety Code § 108981(a).

20. The California legislature has found and declared the following: PFAS are referred to as “forever chemicals” because they are extremely resistant to degradation in the natural environment, including the water, the soil, the air, and our bodies, because of their carbon-fluorine bond, one of the strongest bonds known in nature. See Cal Health & Safety Code § 108981(b).

21. The California legislature has found and declared the following: PFAS have been linked by scientific, peer- reviewed research to severe health problems, including breast and other cancers, hormone disruption, kidney and liver damage, thyroid disease, developmental harm, and immune system disruption, including interference with vaccines. See Cal Health & Safety Code § 108981(c).

[5] https://www.cdc.gov/niosh/topics/pfas/default.html

22. The CDC outlines several health effects associated with PFAS exposure, including cancer, liver damage, decreased fertility, increased risk of asthma and thyroid disease.[6]

23. Other studies have associated exposure to PFAS with increased pregnancy losses, disruption in sex hormone homeo-statis and sexual maturation.[7]

24. Because of the widespread use of PFAS, they can be found in water, air, animals, and soil at locations across the nation and the globe. Due to this widespread use, the CDC's National Health and Nutrition Examination Survey (NHANES) found PFAS in the blood of 97 percent of Americans, suggesting virtually ubiquitous exposure of Californians to these highly toxic chemicals. Widespread use has also resulted in broad PFAS dispersal in indoor and outdoor environments, including the PFAS contamination of the drinking water of approximately 16 million Californians, particularly in disadvantaged communities, of breast milk, and of indoor and outdoor air. See Cal Health & Safety Code § 108981(e).

25. Because PFAS chemicals are "forever chemicals" and accumulate in the human body and environment, there is no safe manner or level of exposure to humans.

26. On October 5, 2021, California Gov. Gavin Newsom signed into law California Assembly Bill 65 (AB 65), Cal Health & Safety Code §§ 108945 — 108947, (added Stats 2021 ch 500 § 1 (AB 652), effective January 1, 2022),

---

[6] https://www.atsdr.cdc.gov/pfas/health-effects/index.html ; see also https://www.hsph.harvard.edu/news/hsph-in-the-news/pfas-health-risks-underestimated/#:~:text=A%20recent%20review%20from%20the,of%20asthma%20and%20thyroid%20disease

[7] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2679623/

which provides for the Prohibition of sales or distribution of new, not previously owned, juvenile products containing regulated PFAS chemicals.

27. Under California Health & Safe Code § 108945 (C)(1) "Juvenile product" means a product designed for use by infants and children under 12 years of age.

28. Under California Health & Safety Code § 108945(b) "Regulated perfluoroalkyl and polyfluoroalkyl substances" or "regulated PFAS" means either of the following:

(1) PFAS that a manufacturer has intentionally added to a product and that have a functional or technical effect in the product, including, but not limited to, the PFAS components of intentionally added chemicals and PFAS that are intentional breakdown products of an added chemical that also have a functional or technical effect in the product.

(2) The presence of PFAS in a product or product component at or above 100 parts per million, as measured in total organic fluorine.

29. While the California Health & Safety Code permits certain levels of organic fluorine in certain products as of January 1, 2023, the omission and non-disclosure of information that is a material concern for consumers is different than compliance under the California Health & Safety Code, which only concerns production and distribution, not otherwise lawful disclosures or warnings. Therefore, required disclosures and warnings are an issue not addressed or covered by the Health & Safety Code. Indeed, Governor Gavin Newsom's veto message in vetoing a "disclosure" bill for products containing perfluoroalkyl and polyfluoroalkyl substances (PFAS)(Assembly Bill No. 2247) makes clear

disclosure requirements are a separate issue. www.gov.ca.gov/wp-content/uploads/2022/09/AB-2247-VETO.pdf?emrc=cc359d.

30. Under the California Health & Safety Code, "Perfluoroalkyl and polyfluoroalkyl substances" or "PFAS" means a class of fluorinated organic chemicals containing at least one fully fluorinated carbon atom. See Cal Health & Safety Code § 108945(e).

31. Under the California Health & Safety Code, the presence of PFAS in a product is measured in total organic fluorine. See, for example, Cal. Health & Safety Code §§ 108945(b)(2)).

32. Leading science has also directed that identification of organic fluorine in industry and consumer products is an indicator that encompasses the total content of both known and unknown types of PFAS, unlike traditional targeted analyses that can reliably quantify only a few dozen known PFAS that have commercially available analytical standards." [8]

33. Plaintiff commissioned independent third-party testing to determine whether products in the Product Line and the products purchased by Plaintiff in the Product Line contain organic fluorine.

34. The independent testing by Plaintiff was performed by an independent analytical contract laboratory founded in 1950. [9] The laboratory is compliant with the Code of Federal Regulations (CFR) parts 210 and 211 for

---

[8] Anna S. Young, Heidi M. Pickard, Elsie M. Sunderland, and Joseph G. Allen; "Organic Fluorine as an Indicator of Per- and Polyfluoroalkyl Substances in Dust from Buildings with Healthier versus Conventional Materials" *Environmental Science & Technology*. November 4, 2022.

[9] Pursuant to Fed Rules Civ Proc Rule 26(A)(2), Plaintiff does not disclose the identity of the laboratory with the filing of this Second Amended Complaint.

analytical subcontract laboratories, as well as GLP/cGMP compliant, FDA registered, and maintains a current ISO 17025 accreditation. The laboratory is also listed on the Consumer Product Safety Commission's website as an accredited analytical testing laboratory.

35. The testing conducted by the laboratory was conducted in accordance with accepted industry standards for detecting the presence of organic fluorine.

36. The testing was performed at the independent analytical contract laboratory's facilities.

37. Plaintiff conducted two rounds of testing. The first round was conducted on the same product as those Plaintiff purchased and near in time to Plaintiff's purchases. Specifically, Plaintiff was a frequent shopper of the products from the Product Line and purchased the Nuby Grip N' Sip Soft Spout Trainer Cup from a Target retail store in Pasadena, California in January 2022. The tested product purchase date was December 12, 2022, which was within 11 months of Plaintiff's last purchase. The product tested, the tested product purchase date, the source of the tested product, the part tested, the test date and the test result are set forth below:

- **Product Tested**: Nuby Grip N' Sip Soft Spout Trainer Cup
  **Tested Product Purchase Date**: December 12, 2022
  **Source of Tested Product**: random sample purchase from a Target retail store located in Los Angeles (Eagle Rock), CA.
  **Part Tested**: Spout
  **Test Date**: January 12th, 2023
  **Result**: 18 PPM Organic Fluorine

38. The test results found at least one fully fluorinated carbon atom and organic fluorine present in the product tested from the Product Line, which was the same product as those purchased by Plaintiff.

39. The second round of testing commissioned by Plaintiff was performed on two more samples of the same product as those Plaintiff purchased and three (3) other products in the Product Line. The second round of testing conducted tests on the spout and inner lining material of the cup of each of the products tested for a total of ten (10) tests. The products tested, the tested products' purchase dates, the source of the tested products, the parts tested, the test dates and test results are set forth below:

- **Product Tested:** Nuby Grip N' Sip Soft Spout Trainer Cup
  **Tested Product Purchase Date**: February 21, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Part Tested:** Spout
  **Test Date:** February 27, 2024
  **Result:** 98.13 PPM Organic Fluorine

- **Product Tested:** Nuby Grip N' Sip Soft Spout Trainer Cup
  **Tested Product Purchase Date**: February 21, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Part Tested:** Inner Lining Material of the Cup
  **Test Date:** February 27, 2024
  **Result:** 62.2 PPM Organic Fluorine

- **Product Tested:** Nuby Grip N' Sip Soft Spout Trainer Cup
  **Tested Product Purchase Date**: February 21, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Part Tested:** Spout
  **Test Date:** February 28, 2024
  **Result:** 32.13 ppm Organic Fluorine

- **Product Tested:** Nuby Grip N' Sip Soft Spout Trainer Cup
  **Tested Product Purchase Date**: February 21, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Part Tested:** Inner Lining Material of the Cup
  **Test Date:** February 27, 2024
  **Result:** 403.77 ppm Organic Fluorine

  **Product Tested:** Nuby Clik It Soft Spout Cup
  **Tested Product Purchase Date**: February 21, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Part Tested:** Spout
  **Test Date:** February 27, 2024
  **Result:** 828 ppm Organic Fluorine

- **Product Tested:** Nuby Clik It Soft Spout Cup
  **Tested Product Purchase Date**: February 21, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Product:** Nuby Clik It Soft Spout Cup 1
  **Part Tested**: Inner Lining Material of the Cup
  **Test Date:** February 27, 2024
  Result: 58.4 ppm Organic Fluorine

- **Product Tested:** Nuby Clik It Soft Spout Trainer Cup
  **Tested Product Purchase Date**: February 21, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Part Tested:** Spout
  **Test Date:** February 27, 2024
  **Result:** 67.3 ppm Organic Fluorine

- **Product Tested:** Nuby Clik It Soft Spout Trainer Cup
  **Tested Product Purchase Date**: February 21, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Part Tested:** Inner Lining Material of the Cup
  **Test Date:** February 27, 2024
  **Result:** 52.7 ppm Organic Fluorine

- **Product Tested:** Nuby Soft Silicone Spout Cup
  **Tested Product Purchase Date**: February 21, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Part Tested:** Spout
  **Test Date:** February 27, 2024
  **Result:** 70.1 ppm Organic Fluorine

- **Product Tested:** Nuby Soft Silicone Spout Cup
  **Tested Product Purchase Date**: February 21, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Part Tested:** Inner Lining Material of the Cup
  **Test Date:** February 27, 2024
  **Result:** 53.9 ppm Organic Fluorine

40. The test results found at least one fully fluorinated carbon atom and organic fluorine present in all of the products tested from the Product Line, including the same products as those purchased by Plaintiff.

41. The test results indicated dangerous levels of organic fluorine. To put the test results into perspective, the California legislature recently enacted law that will limit the total amount of intentionally added organic fluorine in textile products to 50 ppm and (see Cal. Health & Safety Code § 108970(g)(2)), cosmetic products to zero (see Cal. Health & Safety Code §§ 108981.5 and 108982), food packaging to zero (see Cal. Health & Safety Code § 109000(b)) and juvenile products to 100ppm (California Health & Safety Code § 108945(b)).

42. Several of the test results of the products in the Product Line tested by Plaintiff exceed the levels permitted by California Health & Safety Code § 108945(b).

43. Because PFAS chemicals are "forever chemicals" and accumulate in the human body, there is in fact no safe manner or level of exposure to humans. The products in the Product Line are particularly concerning given the fact that an infant or toddler is being exposed to both the spout and lining and using repeatedly several times a day orally nursing for hours upon use.

44. The existence of organic fluorine in products in the Product Line thus implicates health and safety concerns that a reasonable consumer would find material and therefore, Defendant has a duty to disclose the existence of organic fluorine in products in the Product Line and omitted facts it was obliged to disclose.

**C. Defendant's Omission and Non-Disclosure of The Existence Of Harmful Chemicals In Products In The Product Line That Implicates Health And Safety Concerns That A Reasonable Consumer Would Find Material**.

45. The Product Line's marketing and advertising, including the website pages, product labels and packaging, were and are uniform and pervasive over the proposed class period.

46. The marketing of the products in the Product Line, including the products in the Product Line's website pages, product labels and packaging as set forth herein, and in the photographs below, omit and do not provide any disclosure of the existence of, and potential health risks from, organic fluorine and PFAS in the products in the Product Line:

**Front/ Back Packaging**






**Side** **Bottom**





**Product Insert**



47. The marketing and labeling of the products in the Product Line, as set forth herein, including the products in the Product Line' website pages, packaging and labels, should and could have revealed and disclosed the existence of, and potential health risks from, organic fluorine and PFAS in the products in the Products Line and could and should have provided a disclosure that states, at a minimum, "Caution: This product contains organic fluorine which is a known indicator of per and polyfluoroalkyl substance ("PFAS"). Exposure to PFAS may cause serious health effects."

48. Plaintiff and other consumers were not and are not provided adequate information or warning of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line from the products in the Products' information provided by Defendant.

49. Defendant's omission and non-disclosure of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line is unlawful for the following reasons:

a. It is contrary to a representation(s) made by Defendant. The existence of organic fluorine in the products in the Product Line directly contradicts Defendant's marketing, as set forth above, and specially representations that products in the Product Line and the Nuby brand sells products that do not contain suspected harmful chemicals in manufacturing Nuby products and are sustainable.

b. Is an omission of a fact Defendant was obliged to disclose, on the following basis:

i. Defendant had exclusive knowledge of material facts not known or reasonably accessible to the plaintiff. Defendant has exclusive knowledge of the manufacturing process and composition of materials and chemicals in the products in the Product Line as

Defendant is the manufacturer, distributor, and marketer of the products in the Product Line. At the time of purchase, Plaintiff lacked the knowledge of the manufacturing process and composition of materials and chemicals in the products in the Product Line and lacked the expertise to ascertain the existence of organic fluorine and PFAS in the products in the Product Line and their risks to human health. Further, consumers lacked and continue to lack the knowledge of the manufacturing process and composition of materials and chemicals in the products in the Product Line and the expertise to ascertain the existence of organic fluorine and PFAS in the products in the Product Line and their risks to human health. Plaintiff and reasonable consumers must, and do, rely on Defendant to disclose the materials, chemicals, and ingredients in the products in the Product Line and advise of the risks that may potentially affect the health and/or safety of consumers.

ii. Defendant made and continues to make partial representations that are misleading because some other material fact has not been disclosed. Defendant's representations and images that the products in the Product Line do not contain suspected harmful chemicals and are sustainable contradict and are misleading in light of the omission of the existence of organic fluorine in the products in the Product Line.

iii. The undisclosed information of the existence of organic fluorine in the products in the Product Line implicates safety concerns that a reasonable consumer would find material.

**D. Plaintiff's and Consumers' Reliance on Defendant's Misrepresentations and Omissions and Resulting Harm.**

50. Plaintiff and other consumers read, believed, and relied upon Defendant's marketing and advertising and omissions set forth herein when purchasing the products from the Product Line. Plaintiff and other consumers reasonably understood the marketing and labeling and omission of the existence of organic fluorine in the products in the Product Line to mean that the products do not contain suspected harmful chemicals in manufacturing Nuby products and are sustainable.

51. In reliance on Defendant's labeling, marketing claims and omissions set forth herein, Plaintiff and consumers purchased products they would not have purchased but for Defendant's false promotion of the products in the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable and their omission of information regarding the presence of organic fluorine and PFAS in the products in the Product Line. Had Plaintiff and other consumers known the true nature of the products in the Product Line and had information regarding the presence of organic fluorine and PFAS in the products in the Product Line not been omitted from marketing and labeling materials, they would not have purchased and spent money on products from the Product Line.

**E. Federal Rule of Civil Procedure, Rule 9(b).**

52. Although Defendant is in the best position to know what content it placed in its marketing and what chemicals and ingredients are in the products in the Product Line, Plaintiff nonetheless satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

a. **WHO**: Defendant made material misrepresentations of fact about the products in the Product Line to the public through its website

representations and marketing statements that the products in the Product Line do not contain suspected harmful chemicals in manufacturing Nuby products and are sustainable and omitted the material facts that the products in the Product Line and the products purchased by Plaintiff contain organic fluorine indicative of PFAS that are widely known to have significant negative health repercussions. These representations and omissions constitute material misrepresentations and omissions regarding harmful chemicals in the products in the Product Line.

b. **WHAT**: Defendant knew, or should have known, to test for and disclose of the existence of organic fluorine and PFAS in the products in the Product Line for reasons including, but not limited to, the following: 1) Defendant claims their "sippy cups have been thoroughly tried and tested by experts; 2) Defendant claims it specifies to its manufacturers/suppliers that they are only allowed to use plastics, color pigments and inks that do not contain BPA, Phthalates, *or other suspected harmful chemicals in manufacturing Nuby products*; and 3) on October 5, 2021, prior to Plaintiff's purchase, California Gov. Gavin Newsom signed into law California Assembly Bill 65 ("AB 65"), Cal Health & Safety Code §§ 108945 — 108947, (added Stats 2021 ch 500 § 1 (AB 652), effective January 1, 2022), which provides for the Prohibition of sales or distribution of new, not previously owned, juvenile products containing regulated PFAS chemicals which pursuant to California Health & Safety Code § 108945(b)(2), is measured by total organic fluorine.

c. Defendant's conduct here was, and continues to be, fraudulent because it misrepresented that the products in the Product Line and the products purchased by Plaintiff do not contain suspected harmful chemicals in manufacturing Nuby products and are sustainable despite the fact the

products in the Product Line contain organic fluorine indicative of PFAS that have significant health risks. Further, Defendant omitted any disclosures warning consumers that the products in the Product Line contain organic fluorine indicative of PFAS that have significant health risks. Thus, Defendant's conduct deceived Plaintiff and Class Members into believing that the products in the Product Line do not contain suspected harmful chemicals in manufacturing Nuby products and are sustainable. Defendant knew or should have known that its misrepresentations and omissions of information are material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions, yet Defendant continues to pervasively market the products in the Product Line in this manner.

d. **WHEN:** Defendant made the material misrepresentations and omissions set forth herein during the putative class period, including prior to and at the time Plaintiff purchased the products from the Product Line in January 2022, and continues to do so, despite Defendant's knowledge that the products in the Product Line contained and continue to contain organic fluorine.

e. **WHERE:** Defendant's marketing messages and omissions were uniform and pervasive, carried through material misrepresentations and omissions on Defendant's website representations, marketing statements and the products in the Product Line's labels.

f. **HOW:** Defendant made material misrepresentations of fact about the products in the Product Line through its website representations and marketing statements that the products in the Product Line and the products purchased by Plaintiff do not contain suspected harmful chemicals in manufacturing Nuby products and are sustainable and Defendant omitted

material facts that the products in the Product Line contain organic fluorine indicative of PFAS that have significant health risks.

g. **WHY:** Defendant made the material misrepresentations and omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase products from the Product Line and/or to pay a higher price than they otherwise would have for the products, the effect of which was that Defendant profited by selling more of the products from the Product Line to more consumers than it otherwise would have.

h. **INJURY:** Plaintiff and Class Members purchased products from the Product Line when they otherwise would not have absent Defendant's misrepresentations and omissions of material facts.

53. As such, Defendant has engaged in conduct which violates the California Consumers Legal Remedies Act ("CLRA"), particularly California Civil Code §§ 1770(a)(5), Business & Professions Code § 17200, et seq., Business & Professions Code § 17500, et seq. and Civil Code § 1750, et seq.

**F. Summary of Notice of Violations of Law and Demand For Relief.**

54. On October 2, 2023, Defendant was served by Plaintiff with written notices pursuant to Civil Code § 1750, et seq., which set forth Plaintiff's contentions and requested remedy. Plaintiff's letter was sent via certified mail with electronic return receipt to Defendant who acknowledged receipt. Defendant rejected Plaintiff's attempts to address the concerns stated herein and instead has allowed the products in the Product Line to continue to be sold with full knowledge of the alleged claims.

55. Wherefore, Plaintiff, the Class Members and other California consumers have, among other things, no adequate remedy at law for the injuries that are currently being suffered and that will be suffered in the future in that,

unless and until enjoined by order of this court, the non-disclosure of material information that implicates health and safety concerns that a reasonable consumer would find material will continue and cause great and irreparable injury to Plaintiff, the Class Members and other California consumers.

56. Therefore, Plaintiff brings this action challenging Defendant's claims relating to the products in the Product Line on behalf of herself and all others similarly situated under California's Consumers Legal Remedies Act, particularly California Civil Code §§ 1770(a)(5) and 1770(a)(7), Business & Professions Code § 17200, et seq., Business & Professions Code § 17500, et seq. and California Civil Code § 1750, et seq.

57. Wherefore, Plaintiff seeks in equity an order compelling Defendant to discontinue the conduct alleged herein.

58. Plaintiff further seeks an order compelling Defendant to restore the monetary amounts by which Plaintiff and the Class did not receive the value of the Product(s) they paid for and which Defendant has been unjustly enriched.

59. Plaintiff further seeks actual and punitive damages, pre- and post-judgment interest, attorneys' fees, and costs.

## IV. THE PARTIES

### A. Defendant

60. Defendant Luv n' Care, Ltd. is a Louisiana corporation existing under the laws of the State of Louisiana.

61. Defendant Luv n' Care, Ltd. is now and at all times herein mentioned was engaged in business under the fictitious name "Nuby" ("Defendant Nuby").

62. Defendant Luv n' Care, Ltd. is the owner and distributor of the products in the Product Line and is the company that created and/or authorized the omissions and false, misleading, and deceptive advertisements and packaging for the products in the Product Line alleged herein.

63. Plaintiff is further informed and believes and based thereon alleges that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages hereinafter set forth below. The true names and capacities, whether individual, corporate, associate or otherwise of certain manufacturers, distributors, and/or their alter egos sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiff who therefore sue this Defendant by fictitious names. Plaintiff will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and based thereon alleges that DOES 1 through 10 were authorized to do and did business in Los Angeles, California.

**B. Plaintiff**

64. Plaintiff Brooke Richards ("Plaintiff") is an individual residing in Los Angeles County, California.

65. Plaintiff purchased products from the Product Line that contained organic fluorine. Plaintiff was a frequent shopper of the products from the Product Line and last purchased the Nuby Grip N' Sip Soft Spout Trainer Cup from a Target retail store in Pasadena, California (referred to as the Nuby No Spill Super Spout Trainer Cup on the Target website) in January 2022 for her two children who were under the age of 12. Plaintiff paid approximately $5.00 for one Nuby Grip N' Sip Soft Spout Trainer Cup and approximately $10.00 for a bundle of two Nuby Grip N' Sip Soft Spout Trainer Cup. The independent testing of products from the Product Line conducted by Plaintiff included the same product as those Plaintiff purchased and near in time to Plaintiff's purchases (within 11 months). Therefore, the products Plaintiff purchased from the Product Line contained organic fluorine.

66. Plaintiff and her infant son used the products purchased from the Product Line on a daily basis multiple times throughout the day and were therefore exposed to organic fluorine at a heightened level.

67. Prior to and at the time of each purchase, Plaintiff considered Defendant's marketing and omissions related to the products in the Product Line, including those set out herein, including that the products in the Product Line do not contain suspected harmful chemicals in manufacturing Nuby products and are sustainable. Plaintiff reasonably relied on these misrepresentations and omissions in deciding to purchase the products from the Product Line, and she would not have purchased the products from the Product Line if the true facts had been known. As a direct result of Defendant's material misrepresentations and omissions, Plaintiff suffered and continues to suffer, economic injuries.

68. Plaintiff would like to purchase products from the Product Line in the future. Plaintiff understands that the composition of the products in the Product Line could change to remove all organic fluorine and PFAS over time. However, Plaintiff is unable to determine the composition of the products in the Product Line before purchasing them again and whether the products contain suspected harmful chemicals, or if they continue to contain organic fluorine and PFAS. Plaintiff might purchase products from the Product Line in the future, despite the fact they were once marred by false marketing and omissions of the existence of harmful chemicals in the Product Line, as she may reasonably assume, incorrectly, that the composition of the products in the Product Line was changed to remove all organic fluorine and PFAs. As long as Defendant continues to manufacture the Product Line with organic fluorine but promote the Product Line as not containing suspected harmful chemicals in manufacturing and being sustainable and not disclose to Plaintiff and the public of the existence of, and warn of the potential safety risks from, organic fluorine and PFAS in the Product Line, Plaintiff (and

other consumers) will be unable to make informed decisions about whether to purchase the products in the Product Line and will be unable to evaluate the differences between the products in the Product Line and competitors' products. Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is enjoined from continuing to engage, use, or employ the practice of falsely marketing and advertising for sale of the products in the Product Line as follows:

a. An order compelling Defendant to cease intentionally adding organic fluorine to products in the Product Line;

b. An order compelling Defendant to test for the existence of unintentionally present organic fluorine in the products in the Product Line;

c. If unintentional organic fluorine is detected in the products in the Product Line above 100ppm organic fluorine, an order compelling defendant to replace the organic fluorine with the least toxic alternative;

d. If detectable levels of organic fluorine are in products in the Product Line, an order compelling Defendant to cease marketing, labeling, packaging, and advertising the products in the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable; or

e. If detectable levels of organic fluorine are in products in the Product Line, an order compelling Defendant to disclose to Plaintiff and the public of the existence of, and warn of the potential safety risks from, organic fluorine and PFAS in the products in the Product Line.

## V. CLASS ACTION ALLEGATIONS

69. Plaintiff brings this class action pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of the Class defined as follows:

> All persons who purchased one or more products from the Product Line in the State of California during the time period of four (4) years preceding the date of the filing of this class action through the present.
>
> (Referred to herein as "the Class" or "Class Members")

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

70. Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.

71. Adequacy: Plaintiff is an adequate representative of the Class because Plaintiff's interests are the same as the class in that Plaintiff and the Class Members were subjected to the same omissions and representations by Defendant as set forth herein; Plaintiff intends to prosecute this action vigorously and completely on behalf of herself and the Class Members; Plaintiff has retained competent counsel experienced in prosecuting class actions; and Plaintiff's interests do not conflict with the interests of the Members of the Class. Based thereon, the interests of the Class Members will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

72. Commonality and Predominance of Common Issues: Defendant has acted on grounds common and applicable to the entire Class and therefore, numerous questions of law and fact are common to Plaintiff and the Class Members that predominate over any question affecting only individual Class

Members thereby making relief appropriate with respect to the Class as a whole. Common and predominate factual and legal issues include but are not limited to:

a. The products in the Product Line that were and are currently being manufactured, marketed, advertised and sold by Defendant over the proposed class period and those purchased by Plaintiff and those tested by Plaintiff, as set forth herein, have the same manufacturing process and composition of materials and chemicals and were marketed, advertised and sold by Defendant in the same place and manner.

b. The products in the Product Line are labeled and packaged the same. Therefore, Plaintiff and the Class Members were exposed to the same labeling and packaging for the products in Product Line.

c. Defendant's marketing and representations about the products in the Product Line and Nuby brand to which Plaintiff and the Class were exposed were the same during the class period and therefore common to Plaintiff and the Class Members.

d. Defendant's omissions and non-disclosures as to the products in the Product Line to which Plaintiff and the Class Members were exposed were the same during the class period and therefore common to Plaintiff and the Class Members.

e. Whether the existence of organic fluorine and PFAS in the products in the Product Line implicates potential health or safety concerns to Plaintiff and the Class Members.

f. Whether the omissions and non-disclosures by Defendant of the existence of organic fluorine and PFAS in the products in

the Product Line were and are material to Plaintiff and the Class Members.

g. Whether the marketing and advertising by Defendant promoting the products in the Product Line and the Nuby brand do not contain suspected harmful chemicals in manufacturing Nuby products and are sustainable were and are material to Plaintiff and the Class Members.

h. Whether the marketing and advertising by Defendant promoting the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable was and is false, deceptive and/or misleading in violation of California Business & Professions Code § 17200, et seq., California Business & Professions Code § 17500, et seq. and/or California Civil Code § 1750, et. seq.

i. Whether the omission and non-disclosures by Defendant of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line violates California Business & Professions Code § 17200, et seq., California Business & Professions Code § 17500, et seq. and/or California Civil Code § 1750, et. seq.

73. Accordingly, the determination of Defendant's liability under each of the causes of action presents legal issues that are common to Plaintiff and the class as a whole.

74. Typicality: Plaintiff's claims are co-extensive with those of the Class members as Plaintiff and the Class Member's injuries and claims arise from the same course of conduct by Defendant as alleged herein.

75. The Class is identifiable and ascertainable. Plaintiff has precisely defined the Class based on objective criteria whereby Class Members would be able to know whether they are a member of the prospective Class, specifically, all persons who purchased products from the Product Line in the State of California during the time period of four (4) years preceding the date of the filing of this class action through the present.

76. Notice can be provided to such purchasers using techniques and a form of notice customarily used in class actions, including direct notice by email to the Class Members and other California consumers from Defendant's and third-party retailers' records, internet publication, radio, newspapers, magazines and other social media platforms such as YouTube, Instagram, TikTok and Facebook.

77. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. The expense and burden of individual litigation would make it impracticable and impossible for proposed Class Members to afford to seek legal redress for the wrongs complained of herein and prosecute their claims individually. Therefore, absent a class or representative action, the Class Members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its wrongdoing. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication. Finally, trial on a representative and class basis would be manageable. Liability may be determined by facts and law common to the Class Representative and the Class

Members and monetary damages or restitution may be determined by proven and approved methods on a class wide basis.

## VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, et seq. (Unlawful, Unfair, and Fraudulent Business Acts or Practices and Unfair, Deceptive, Untrue or Misleading Advertising)

78. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

79. This cause of action is brought pursuant to Business and Professions Code §17200, et seq., on behalf of Plaintiff and the Class Members.

80. Defendant is a "person" as defined by California Business & Professions Code § 17201.

81. The omissions and non-disclosures of the existence and health risks of organic fluorine and PFAS in the products in the Product Line and the false, misleading and deceptive marketing and advertising by Defendant detailed herein constitute unlawful, unfair, and fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising within the meaning of California Business & Professions Code § 17200, et seq.

82. Defendant's business practices, described herein, violated and continue to violate the "unlawful" prong of California Business & Professions Code § 17200, et seq. by violating California Civil Code §§ 3294, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

83. Defendant, in its marketing and advertising of the products in the Product Line and Nuby brand, makes material omissions and false and misleading statements regarding the attributes and qualities of the products in the Product Line and the Nuby brand, as set forth herein.

84. Defendant knew that the omissions and representations that it made and continue to make about the products in the Product Line and the Nuby brand are false, deceptive, and misleading to Plaintiff and Class Members.

85. Defendant's omissions and false, deceptive, and misleading representations were material to Plaintiff and the Class Members and played a substantial part, and was a substantial factor, in influencing Plaintiff's and the Class Members' decisions to purchase products from the Product Line.

86. Plaintiff and the Class Members relied on Defendant's omissions and false, deceptive, and misleading representations and would not have purchased the Products from the Product Line if not for the omissions and false, deceptive, and misleading representations and marketing by Defendant about the products in the Product Line and the Nuby brand set forth herein.

87. Plaintiff and the Class Members have suffered injury in fact and have lost money or property as a result of Defendant's false, deceptive, and misleading representations and marketing set forth herein.

88. The Products as purchased by the Plaintiff and the Class Members were and are unsatisfactory and worth less than the amount paid for them.

89. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

90. All of Defendant's conduct alleged herein occurs and continues to occur in Defendant's business.

91. Wherefore, Plaintiff, the Class Members, and other California consumers have, among other things, no adequate remedy at law for the injuries that are currently being suffered and that will be suffered in the future in that, unless and until enjoined by order of this court, the omissions and non-disclosure of material information by Defendant that implicates health and safety concerns that a reasonable consumer would find material (i.e. the non-disclosure of the

existence and health risks of organic fluorine and PFAS in the products in the Product Line) and the continued false, misleading and deceptive marketing and advertising by Defendant promoting the products in the Product Line as containing suspected harmful chemicals in manufacturing Nuby products and are sustainable, will continue and cause great and irreparable injury to Plaintiff, Class Members and other California consumers.

92. Therefore, pursuant to Business & Professions Code § 17203, Plaintiff seeks an order in equity from this Court enjoining Defendant from continuing to engage, use, or employ the practice of falsely marketing and advertising for sale of the products in the Product Line as follows:

a. An order compelling Defendant to cease intentionally adding organic fluorine to products in the Product Line;

b. An order compelling Defendant to test for the existence of unintentionally present organic fluorine in the products in the Product Line;

c. If unintentional organic fluorine is detected in the products in the Product Line above 100ppm organic fluorine, an order compelling defendant to replace the organic fluorine with the least toxic alternative;

d. If detectable levels of organic fluorine are in products in the Product Line, an order compelling Defendant to cease marketing, labeling, packaging, and advertising the products in the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable; and

e. If detectable levels of organic fluorine are in products in the Product Line, an order compelling Defendant to disclose to

Plaintiff and the public of the existence of, and warn of the potential safety risks from, organic fluorine and PFAS in the products in the Product Line.

93. In addition, Plaintiff seeks an order awarding Plaintiff and the Class Members restitution of the monetary amounts by which Plaintiff and the Class Members did not receive the value of the products in the Product Line they paid for, and by which Defendant was unjustly enriched.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, et seq. (False and Misleading Advertising)**

94. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

95. This cause of action is brought pursuant to California Business and Professions Code § 17500, et seq., on behalf of Plaintiff and the Class.

96. As alleged in the preceding paragraphs, the omissions and non-disclosures of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line and the false, misleading and deceptive marketing and advertising by Defendant promoting the products in the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable detailed herein constitute unfair, unlawful, and fraudulent business practices within the meaning of California Business & Professions Code § 17500, et seq.

97. Defendant intended the omissions and non-disclosures of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line and the marketing and advertising by Defendant promoting the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable detailed herein.

98. Defendant publicly disseminated advertising which contained unlawful omissions and non-disclosures of material facts (i.e. the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line) and publicly disseminated advertising promoting the products in the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable which Defendant knew, or should have known in the exercise of reasonable care, was untrue or misleading via advertising mediums that include but are not limited to, https://us.nuby.com/collections/sippy-cups, as set forth herein.

99. Defendant's omissions and false, deceptive, and misleading representations were material to Plaintiff and the Class Members and played a substantial part, and was a substantial factor, in influencing Plaintiff's and the Class Members' decisions to purchase products from the Product Line.

100. Plaintiff and the Class Members relied on Defendant's omissions and false, deceptive, and misleading representations and would not have purchased products from the Product Line if not for the omissions and false, deceptive, and misleading representations and marketing by Defendant set forth herein.

101. Plaintiff and the Class Members have suffered injury in fact and have lost money or property as a result of Defendant's false, deceptive, and misleading representations and marketing set forth herein.

102. The Products as purchased by the Plaintiff and the Class Members were and are unsatisfactory and worth less than the amount paid for them.

103. All of Defendant's conduct alleged herein occurs and continues to occur in Defendant's business.

104. Wherefore, Plaintiff, the Class Members, and other California consumers have, among other things, no adequate remedy at law for the injuries that are currently being suffered and that will be suffered in the future in that,

unless and until enjoined by order of this court, the omissions and non-disclosure of material information by Defendant that implicates health and safety concerns that a reasonable consumer would find material ( i.e. the non-disclosure of the existence of, and health risks from, organic fluorine and PFAS in products in the Product Line) and the continued false, misleading and deceptive marketing and advertising by Defendant promoting the products in the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable will continue and cause great and irreparable injury to Plaintiff, Class Members and other California consumers.

105. Therefore, pursuant to Business & Professions Code §17535, Plaintiff seeks an order in equity from this Court enjoining Defendant from continuing to engage, use, or employ the practice of falsely marketing and advertising for sale the products in the Product Line as follows:

a. An order compelling Defendant to cease intentionally adding organic fluorine to products in the Product Line;

b. An order compelling Defendant to test for the existence of unintentionally present organic fluorine in the products in the Product Line;

c. If unintentional organic fluorine is detected in the products in the Product Line above 100ppm organic fluorine, an order compelling defendant to replace the organic fluorine with the least toxic alternative;

d. If detectable levels of organic fluorine are in products in the Product Line, an order compelling Defendant to cease marketing, labeling, packaging, and advertising the products in the Product Line as not containing suspected harmful

chemicals in manufacturing Nuby products and being sustainable; and

e. If detectable levels of organic fluorine are in products in the Product Line, an order compelling Defendant to disclose to Plaintiff and the public of the existence of, and warn of the potential safety risks from, organic fluorine and PFAS in the products in the Product Line.

106. In addition, Plaintiff seeks an order awarding Plaintiff and the Class Members restitution of the monetary amounts by which Plaintiff and the Class Members did not receive the value of the products in the Product Line they paid for and by which Defendant was unjustly enriched.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE § 1750, et seq.

## (Consumer Legal Remedies Act)

107. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

108. This cause of action is brought pursuant to California Civil Code § 1750, et seq., the Consumers Legal Remedies Act, on behalf of Plaintiff and a Class pursuant to California Civil Code § 1781 consisting of the Class defined above.

109. The Class consists of thousands of persons, the joinder of whom is impracticable.

110. There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual members, including but not limited to:

a. The products in the Product Line that were and are currently being manufactured, marketed, advertised and sold by

Defendant over the proposed class period and those purchased by Plaintiff and those tested by Plaintiff, as set forth herein, have the same manufacturing process and composition of materials and chemicals and were marketed, advertised and sold by Defendant in the same place and manner.

b. The products in the Product Line are labeled and packaged the same during the proposed class period. Therefore, Plaintiff and the Class Members were exposed to the same labeling and packaging for the products in the Product Line.

c. Defendant's marketing and representations about the products in the Product Line and Nuby brand to which Plaintiff and the Class were exposed were the same during the proposed class period and therefore common to Plaintiff and the Class Members.

d. Defendant's omissions and non-disclosures as to the products in the Product Line to which Plaintiff and the Class Members were exposed were the same during the proposed class period and therefore common to Plaintiff and the Class Members.

e. Whether the existence of organic fluorine and PFAS in the products in the Product Line implicates potential health or safety concerns to Plaintiff and the Class Members.

f. Whether the omissions and non-disclosures by Defendant of the existence of organic fluorine and PFAS in the products in the Product Line were and are material to Plaintiff and the Class Members.

g. Whether the marketing and advertising by Defendant promoting the products in the Product Line and the Nuby brand as not

containing suspected harmful chemicals in manufacturing Nuby products and being sustainable.

h. Whether the marketing and advertising by Defendant promoting the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable was and is false, deceptive and/or misleading in violation of California Civil Code § 1750, et. seq.

i. Whether the omission and non-disclosures by Defendant of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line violates California Civil Code § 1750, et. seq.

111. As set forth in detail herein, Defendant publicly disseminated marketing and advertising which contained unlawful omissions and non-disclosures of material facts (i.e. the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line) and publicly disseminated marketing and advertising promoting the products in the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable when in fact they are not.

112. The policies, acts, and practices described herein were intended to result in the sale of the products in the Product Line to the consuming public and violated and continue to violate California Civil Code § 1770(a)(5) of the Act by making omissions and representations that the products in the products in the Product Line have characteristics, ingredients and benefits which they do not have as represented, and violate California Civil Code § 1770(a)(7) by representing that the products in the Product Line are of a particular standard, quality, grade and style when they are of another.

113. In doing so, Defendant intentionally misrepresented material facts.

114. Defendant's omissions and representations about the products in the Product Line led Plaintiff and other consumers to believe that the products in the Product Line have characteristics, ingredients and benefits which they do not have and are of a particular standard, quality, grade and style when they are of another.

115. Defendant knew that the omissions and the representations concerning the products in the Product Line's purported attributes and qualities were false and/or misleading and material to the Plaintiff, the Class Members and other consumers' purchase decisions.

116. Defendant's actions as described hereinabove were done with a conscious disregard of Plaintiff's, the Class Members' and other consumers' rights.

117. Defendant's omissions and false, deceptive, and misleading representations were material to Plaintiff and the Class Members and played a substantial part, and was a substantial factor, in influencing Plaintiff's and the Class Members' decisions to purchase products from the Product Line.

118. Plaintiff and the Class Members relied on Defendant's omissions and false, deceptive, and misleading representations and would not have purchased the products from the Product Line if not for the omissions and false, deceptive, and misleading representations and marketing by Defendant set forth herein.

119. Plaintiff and the Class Members have suffered injury in fact and have lost money or property as a result of Defendant's false, deceptive, and misleading representations and marketing set forth herein.

120. The Products as purchased by the Plaintiff and the Class Members were and are unsatisfactory and worth less than the amount paid for them.

121. On October 2, 2023, Defendant was served by Plaintiff with written notices pursuant to Civil Code § 1750, et seq., which set forth Plaintiff's contentions and requested remedy. Plaintiff's letter was sent via certified mail

with electronic return receipt to Defendant who acknowledged receipt. Defendant rejected Plaintiff's attempts to address the concerns stated herein and instead has allowed the products in the Product Line to continue to be sold with full knowledge of the alleged claims.

122. All of Defendant's conduct alleged herein occurs and continues to occur in Defendant's business.

123. Wherefore, Plaintiff and other California consumers have, among other things, no adequate remedy at law for the injuries that are currently being suffered and that will be suffered in the future in that, unless and until enjoined by order of this court, the omissions and non-disclosure of material information by Defendant that implicates health and safety concerns that a reasonable consumer would find material (i.e. the existence of, and health risks from, of organic fluorine and PFAS in the products in the Product Line) and the continued false, misleading and deceptive marketing and advertising by Defendant promoting the products in the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable, will continue and cause great and irreparable injury to Plaintiff, Class Members and other California consumers.

124. Therefore, pursuant to California Civil Code § 1780(a)(2), Plaintiff seeks an order in equity from this Court enjoining Defendant from continuing to engage, use, or employ the practice of falsely marketing and advertising for sale the Products as follows:

a. An order compelling Defendant to cease intentionally adding organic fluorine to products in the Product Line;

b. An order compelling Defendant to test for the existence of unintentionally present organic fluorine in the products in the Product Line;

c. If unintentional organic fluorine is detected in the products in the Product Line above 100ppm organic fluorine, an order compelling defendant to replace the organic fluorine with the least toxic alternative;

d. If detectable levels of organic fluorine are in products in the Product Line, an order compelling Defendant to cease marketing, labeling, packaging, and advertising the products in the Product Line as not containing suspected harmful chemicals in manufacturing Nuby products and being sustainable; and

e. If detectable levels of organic fluorine are in products in the Product Line, an order compelling Defendant to disclose to Plaintiff and the public of the existence of, and warn of the potential safety risks from, organic fluorine and PFAS in the products in the Product Line.

125. In addition, Plaintiff seeks an order awarding Plaintiff and the Class Members restitution of the monetary amounts by which Plaintiff and the Class Members did not receive the value of the products in the Product Line they paid for and by which Defendant was unjustly enriched.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

**FIRST AND SECOND CAUSES OF ACTION**

1. An order enjoining Defendant from the practices complained of herein;

2. An order certifying that the action may be maintained as a Class Action;

3. For an award of restitution in an amount according to proof at trial;

4. For an award of attorney fees pursuant to California Civil Code § 1021.5.

**THIRD CAUSE OF ACTION**

1. An order enjoining Defendant from pursuing the practices complained of pursuant to California Civil Code § 1780(a)(2);
2. An order certifying that the action may be maintained as a Class Action pursuant to California Civil Code § 1781;
3. For an award of restitution in an amount according to proof at trial pursuant to California Civil Code § 1780(a)(3);
4. For an award of punitive damages pursuant to California Civil Code § 1780(a)(4);
5. For an award of costs of this suit pursuant to California Civil Code § 1780(e);
6. For an award of attorney fees pursuant to California Civil Code § 1780(e) and/or California Civil Code § 1021.5.

**FURTHER RELIEF**

Plaintiff further seeks actual and punitive damages pursuant to California Civil Code § 3294, pre- and post-judgment interest and such other and further relief as the Court may deem necessary or appropriate.

**VII. JURY TRIAL DEMANDED**

Plaintiff demands a jury trial on all triable issues.

DATED: June 24, 2024 STEVENS, L.C.

By: ______________________

Paul D. Stevens
Attorneys for Plaintiff and the Class